Filed 2/23/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KEVIN ANDRES on Habeas Corpus. | D067039<br><br>(Super. Ct. No. HSC11347) |

APPEAL from an order of the Superior Court of San Diego County, Stephanie Sontag, Judge.  Affirmed.

Randy Mize, Chief Deputy Public Defender, and Robert L. Ford, Deputy Public Defender, for Petitioner Kevin Andres.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Phillip J. Lindsay and Linnea D. Piazza, Deputy Attorneys General, for Respondent the People.

Respondent Daniel Paramo, Warden at Richard J. Donovan Correctional Facility (collectively RJDCF), appeals the superior court's order granting petitioner Kevin Andres's petition for writ of habeas corpus (petition).  The court found that Andres properly prepared and timely submitted via institutional mail an administrative appeal involving an incident that occurred on January 20, 2013, despite the fact the RJDCF

appeals office never received the appeal. Without reaching the merits, the court merely ordered RJDCF to process Andres's appeal as being timely received. Affirmed.

BACKGROUND

Andres alleged on January 20, 2013 he was the victim of excessive force by one or more correctional officers at RJDCF when he was shot with a bean bag and struck multiple times with a baton while prone on the floor (January 20 incident). Andres further alleged that he timely submitted an administrative appeal on January 25 and again on February 19, 2013 to redress his grievance. He filed his petition in early April 2013, when he received no response from RJDCF to either administrative appeal. Finally, in early June 2013, the RJDCF appeals coordinator notified Andres that his February 19 appeal was canceled as untimely. The appeals coordinator later claimed never to have received Andres's January 25 appeal.

The court in its May 13, 2013 order found that Andres made a prima facie showing that he was the victim of excessive force and that the administrative appeals process was futile. The court thus ordered RJDCF to file an informal response to address the "status" of Andres's appeals.

After reviewing the informal response of RJDCF and the reply to that response of Andres, the court in its August 27, 2013 order found a material issue of fact existed regarding whether Andres "filed his administrative appeal(s) in a timely fashion." The court in its August 23 order thus issued an order to show cause directing RJDCF to "specifically address why Petitioner [Andres] is not entitled to have his grievance investigated . . . in accordance with the Department Operations Manual §§ 54100.10 and

2

54100.25, and Cal. Code Regs. tit. 15 §§ 3268-3268.2." The August 23 order also directed RJDCF to submit a "[r]eturn" and Andres to submit a "[d]enial."

The court in its July 30, 2014 order found there was a "reasonable likelihood" that Andres may be entitled to relief under his petition. The court further found that whether Andres was entitled to relief "depend[ed] on the resolution of facts surrounding Petitioner's claim that he submitted an administrative appeal in a timely fashion and whether the misconduct alleged by Petitioner should have been investigated as a Staff Complaint." The court thus ordered an evidentiary hearing to be held to address the factual issues raised by Andres's petition.[1]

The record shows an evidentiary hearing was held on August 22, 2014. Andres testified on his own behalf, and Ronald Olson, an appeals coordinator, testified on behalf of RJDCF.

Andres testified that he used the required form 602 in preparing his administrative appeal stemming from the January 20 incident; that after he completed his administrative appeal, he made a copy of that form; that he put the original appeal in a "U-Save, EM" envelope; that he addressed the envelope to the appeals coordinator; and that he mailed it via institutional mail between 4:30 and 8:30 p.m. on January 25. Andres never received a response to his January 25 appeal.

---

[1]    The court in its July 30 order found that even if Andres's petition was one of mandate, RJDCF received notice of the petition from the court and that, in any event, RJDCF was not prejudiced by Andres's failure to personally serve the petition. As such, the court concluded the procedural requirements for service of the petition had been satisfied.

When Andres did not receive (what he considered to be) a timely response to his January 25 appeal, he testified he spoke to his cellmate, who told Andres that he had experienced similar problems when submitting an administrative appeal to RJDCF. Concerned his January 25 appeal would be mishandled, Andres, with the help of his cellmate, submitted another appeal dated February 17, 2013 concerning the January 20 incident. This time, however, Andres mailed his administrative appeal to the warden, using legal mail. Andres testified he deposited his February 17 appeal in the inmate mailbox after dinner on February 19. Andres was then unaware of the "602 lock box" that was located adjacent to the inmate mailbox. At the hearing, he described the 602 lock box as a "small little box."

Andres testified he waited until February 19 to mail his February 17 appeal because he then believed RJDCF had a policy that if an inmate filed more than one appeal within 30 days they *both* would be rejected. Andres testified he was then in a "dilemma" because the incident took place on January 20, 2013. As such, he was required to file an appeal within 30 days, which he noted would have been on or before February 19. However, he further noted that, because he filed his first administrative appeal on January 25, RJDCF had 30 days to respond or until February 24, which was after the February 19 deadline. Because he was concerned RJDCF would not respond to his January 25 appeal, he therefore refiled his administrative appeal "before the 30-day deadline was up."

The record includes a log of "legal mail" for Andres through March 15, 2013. Page 2 of the log shows an entry dated "2/20/2013" to "D. Paramo, Warden@RJD." Next

4

to this entry is the handwritten notation, "Legal Mail to Warden Containing 602/Civil Complaint on excessive force."

When asked if he mailed the February 17 appeal on February 20, 2013, as noted in the log, Andres testified, "I know I specifically -- that I filed [this complaint] on the 19th because I made it a point to file within the 30 days from the 20th, strictly because they -- I knew that they were trying to out wait [*sic*] the deadline on the first 602. And I got some resistance from the C.O. then. They said we don't want to send this mail to the warden, and they argued with me." When asked what date they argued with him, Andres said, "the 19th."

After waiting another 30 days and hearing no response by RJDCF to either the January 25 or February 17 appeals, Andres testified he filed on March 23, 2013 a "rights and responsibility statement" (March 23 statement) in which he noted a lack of response to either of his form 602's. Andres sent the March 23 statement via United States mail to the chief of appeals–inmates appeal branch, in Sacramento.

As noted, Andres filed his petition in early April 2013, after not receiving any response to his January 25 and February 17 appeals. Finally, more than five *months* after the January 20 incident, and *after* filing his petition and *after* the court in its May 13, 2013 order made a prima facie showing he may be entitled to relief, RJDCF on or about June 5, 2013 informed Andres that his February 17 appeal was canceled as "untimely."

Olson testified as follows at the August 22 evidentiary hearing regarding the process inmates follow to file an administrative appeal:

5

"Well, the official method is to place it [i.e., the form 602] in the appeal[s] collection box. That ensures the security of the appeal, and it allows us to track and log it in. *But inmates do submit their appeals through the institutional mail at times, and sometimes they even give it to staff to deliver to the appeal[s] office.*" (Italics added.)

Olson testified that inmates also were given a pamphlet, aptly titled "How to Submit an Appeal" (appeal pamphlet), to help them with the appeal process. Under the section "how to file an appeal," the appeal pamphlet instructs that after a form 602 is completed, the inmate must "[t]hen *mail* [the] appeal to the local Appeals Coordinator (AC)." (Italics added.)

Olson testified that appeal collection boxes were located in each housing unit among other locations; that the number "602" appears on the boxes; that based on operational policy, which became effective in April 2012, only the sergeant had access to the collection boxes; and that the sergeant was supposed to log the appeals into a logbook and then deliver them to the appeals office. Olson noted if an inmate's appeal was not logged it meant that the inmate did not submit his appeal through a secure collection box.

Olson testified there was another box for institutional mail that was also located in each of the housing units. Like the secured collection boxes, the institutional mailboxes were also locked. Olson noted an inmate could send his appeal via institutional mail by merely "plac[ing] it in that box." He noted some inmates used a certain kind of envelope, known as "U-Save, Em," but other times inmates used a plain-white envelope or sometimes just submitted their appeals "loose[ly]." Olson also noted institutional mail did not require postage, as the mail was processed through the RJDCF mailroom and then

6

routed to its destination.  Olson further noted that only "confidential legal mail" was tracked when deposited in the institutional mailbox.

Olson testified that once an appeal was received, it was reviewed for regulatory compliance.  If an appeal was accepted, it was then assigned out.  If there was a problem with an appeal that could be corrected, Olson stated the appeal would be "rejected" and returned to the inmate with instructions on how to correct the appeal.  Finally, if an appeal could not be corrected, it would be "canceled" and returned to the inmate, who then had 30 days from receipt of the notice of cancelation to appeal the cancelation decision.

Olson testified the timeliness of an inmate's appeal was determined when it was received by the appeals office.  If an appeal was received more than 30 days after the "action" or "decision" that was the subject of the appeal, it was deemed untimely.  Olson explained they used the date it was received because otherwise "inmates [could] backdate their appeals."  Before an appeal was canceled, Olson testified they determined whether there were "any circumstances that would indicate that it wasn't the inmate's fault, that it didn't get right to us, you know, that we would take that into consideration.  And we can actually have discretion to accept the appeal, even though we actually received it late."

When asked whether such "circumstances" might include institutional mail, Olson testified as follows:

"Well, the institutional mail is not the approved way of sending it, but we do try to, you know, look at the circumstances.  If we knew our mailroom was behind -- there w[ere] any delays.  . . . But there are times when the mailroom -- we thought there might

7

be a chance that the mailroom was delayed, then we will take that into consideration to accept the appeal."

When asked whether any such exceptions would apply if an inmate sent an appeal to another person, like a warden, Olson testified, "That's -- that's -- well, I would look at the circumstances, but I would not consider that to be a valid reason why it was received late." When asked what would happen if an appeal was sent to the warden, Olson stated the warden would either return the appeal to the inmate with instructions to submit it directly to the appeals coordinator or would just forward the appeal to the appeals office.

With regard to Andres's appeal(s), Olson testified that the appeals office received only one appeal, dated February 17, 2013; that the February 17 appeal was received in the appeals office on March 1, 2013; that based on the envelope, the warden had forwarded the February 17 appeal to the appeals office; that the appeals office on March 4, 2013 canceled the appeal because it was untimely, inasmuch as it was "mailed" per the log on February 20 or more than 30 days after the January 20 incident; and that although the February 17 appeal was canceled, it nonetheless was sent for an "allegation review" because the appeal alleged excessive force.

As noted, Andres was notified on or about June 5, 2013 that his appeal had been canceled. When asked why it took the appeals office so long to notify Andres, Olson testified the office "had an enormous amount of backlog." Although Andres had 30 days to appeal the cancelation decision, Olson testified that Andres never filed such an appeal. Olson also testified the appeals office never received Andres's January 25 appeal.

8

At the conclusion of the evidentiary hearing, the court found that Andres had timely submitted his January 25 appeal via institutional mail. In so finding, the court rejected RJDCF's contentions that Andres failed to exhaust his administrative remedies when he failed to file an appeal to the notice of cancelation and that his appeal, in any event, was untimely.

The court stated it was "astonished" that RJDCF would claim Andres failed to exhaust his administrative remedies given that RJDCF did not notify Andres his appeal had been canceled until *after* Andres had filed his petition, and given that RJDCF aggressively argued Andres's February 17 appeal was untimely. Because RJDCF took the position the appeal was untimely, the court found it would have been futile for Andres to have appealed the cancelation notice.

The court also found Andres and his testimony credible with respect to the date he prepared and filed his January 25 appeal. Specifically, the court found that from the "very beginning after this [i.e., the January 20 incident], I [i.e., the court] ha[s] reams of documentation that Mr. Andres was pursuing whatever remedy he could possibly think of because, right or wrong . . . he felt that he was wronged on that date. [¶] And I find -- I don't know when the January 25th appeal was filed. I believe it was filed. I don't find any deliberate wrongdoing by anybody at [RJDCF], but I think the appeal just went missing with the reams of paperwork that are filed in the appeal[s] office and otherwise at [RJDCF]. You know, I imagine things do go missing. They go missing here in this courthouse. So I don't find it unreasonable that after he got no response, that he went okay. Watch this. I'm going to go file it with the warden.

9

"I understand better from Mr. Olson's testimony why it's a receipt date rather than a filed date for the 30 days; however, I think that if you -- 30 days isn't very long. And I think if you put it in the mailbox within 30 days, to me that's sufficient. But I'm finding – I have to say I'm finding that there was an earlier appeal – an earlier timely appeal that was filed and was somehow misplaced. [¶] . . . [¶]

"That it was not until after [Andres filed his petition and after the May 13, 2013 order for the informal response was sent] that that the cancellation was received . . . by Mr. Andres – that not only received, but issued. To say at that point with able counsel [RJDCF] was vociferously fighting the fact that Mr. Andres can pursue his appeal, I just find it kind of incredible that you would argue that he had to go back and exhaust his appeals at that point. There is no clear indication by [RJDCF] that [it was] going to do anything – as indicated by this hearing here, anything but deny the timely filing of the complaint. [¶] So . . . I'm also finding . . . a waiver because of [RJDCF's] untimely response" to the February 17 appeal.

The record shows that the court next clarified that it was finding the January 25 appeal was timely filed and that, in granting Andres's petition, it was "sending this back to [RJDCF] so that his appeal can be processed." The court thus found it resolved the only issue before it—whether Andres timely filed his administrative appeal—and the matter was "back to Mr. Olson's office to process as he would any 602 that was going to be processed."

In mid-September 2014, RJDCF moved for reconsideration of the court's August 22 oral pronouncement of findings following the evidentiary hearing. RJDCF contended

10

that even if Andres in fact submitted his January 25 appeal, as found by the court, he was not entitled to have RJDCF process his appeal because he failed to follow the proper procedure for submitting his appeal when he used institutional mail in lieu of the secure collection box.

On October 10, 2014, the court issued a written order granting Andres's petition nunc pro tunc to August 22, 2014. On October 21, 2014, the court issued another order denying RJDCF's reconsideration motion. In so doing, the court noted that RJDCF's motion included evidence that was available but *not* presented at the August 22 evidentiary hearing and, thus, found the attachment of such evidence to be "unauthorized and untimely."

However, the court addressed the merits of the reconsideration motion, in which RJDCF contended the *exclusive* means for inmates to submit form 602 administrative appeals was through the secured collection boxes. The court found that RJDCF's position in its reconsideration motion was "contradicted by evidence [RJDCF] presented at the evidentiary hearing." The court cited Olson's testimony from the August 22 evidentiary hearing that there were different, approved methods at RJDCF to submit a form 602 appeal, including submitting the appeal "through the institutional mail" as Andres had done, "giv[ing] it to staff to deliver to the appeal[s] office," or the "official method," which was to place the appeal in the "appeal[s] collection box."

The court thus found in its October 21 order that Olson's testimony at the August 22 hearing "makes clear that [Andres] utilized an approved method for submitting [his] administrative appeal[], namely the use of institutional mail through submission of a 'U-

11

save, Em envelope,' that does not require postage. [Citation.] Mr. Olson's testimony at the evidentiary hearing credibly confirms that the Appeals Coordinator at RJDCF accepts administrative appeals submitted by inmates by way of institutional mail. To the extent the court may be required to consider belated evidence that secured appeal collection boxes are the only approved method to submit administrative appeals, such evidence is simply not credible. Moreover, [RJDCF's] attempt to limit [Andres] to filing his appeal by means of a secured appeal collection box in the present case is arbitrary, irrational, and constitutes [an] abuse of discretion, inasmuch as the Appeals Coordinator accepts administrative appeals through institutional mail and by personal delivery by other staff members.

"The court also finds that the mailing of administrative appeals is authorized by the applicable regulations. Mr. Olson testified that the proper submission of appeals is governed by Cal. Code Regs. tit. 15, § 3084. [Citation.] Cal. Code Regs. tit. 15, § 3084.2(b)(2) . . . authorizes inmates to submit their administrative appeals via mail. It provides, 'Inmates or parolees shall submit their appeal documents in a single **mailing** and shall not divide their appeal documents into separate **mailings**.' (Emphasis added.)" As a result, the court in its October 21 order found that to the extent RJDCF policy regarding submitting an appeal conflicted with this regulation, such policy was void.[2]

---

2     In particular, the court referenced court exhibit 12 and "Exhibit 30." Court exhibit 12, which the parties relied on at the August 22 hearing, is a memorandum dated April 2012 regarding use of the secure collection boxes for appeals at RJDCF. Exhibit 30 is a memorandum dated April 30, 2012 based on court exhibit 12 that RJDCF submitted in response to Andres's opposition to the motion for reconsideration. Exhibit 30 in pertinent

Finally, in early March 2015, our court granted the supersedeas petition of RJDCF to stay the August 22 and October 10, 2014 orders of the court.

DISCUSSION

RJDCF contends it was not required to process Andres's January 25 appeal because he failed to follow RJDCF's approved administrative procedure for submitting his appeal. Because it never received the January 25 appeal, RJDCF further contends that Andres should not have been allowed to argue, or the court to find, that he in fact timely submitted the January 25 appeal via institutional mail.

A. *Standard of Review*

"In an appeal from an order granting a petition for habeas corpus after an evidentiary hearing, basic principles of appellate review apply, and thus, questions of fact and questions of law are reviewed under different standards. [Citation.] . . . [F]indings of fact will be accorded due deference under the substantial evidence standard. [Citation.] However, '[t]his court . . . independently reviews questions of law, such as the selection of the controlling rule.' [Citation.] Mixed questions of law and fact are reviewed under the clearly erroneous standard if the inquiry is predominantly factual, but are reviewed de novo if the application of law to fact is predominantly legal. [Citation.]" (*In re Douglas* (2011) 200 Cal.App.4th 236, 242.)

_____

part states going forward an inmate "will be required to place all outgoing [form] 602['s] . . . in the 'secured appeal collection boxes' located within all housing areas of the institution."

13

B. *Guiding Principles*

An Inmate "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." (Cal. Code Regs., tit. 15,[3] § 3084.1, subd. (a).) "The appeal process is intended to provide a remedy for inmates . . . with identified grievances and to provide an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions . . . ." (*Ibid.*) "An inmate . . . has the right to file one appeal every 14 calendar days unless the appeal is accepted as an emergency appeal." (*Id.*, subd. (f).) An inmate also must "adhere to appeal filing time constraints as defined in section 3084.8." (*Id.*, subd. (g).)

An inmate is required to use a CDCR Form 602 "to describe the specific issue under appeal and the relief requested" (§ 3084.2, subd. (a)); to submit a signed original appeal form and supporting documents (*id.*, subd. (b)); and, as noted by the trial court, to submit his or her "appeal documents in a single mailing" without "divid[ing] [his or her] documents into separate mailings" (*id.*, subd. (b)(2)).

The regulations require each institution to "designate an appeals coordinator." (§ 3084.5, subd. (a).) "The appeals coordinator or a delegated staff member under the direct oversight of the coordinator shall screen all appeals prior to acceptance and assignment for review." (*Id.*, subd. (b).) "When an appeal is not accepted, the inmate

---

3    All further statutory references are to the California Code of Regulations, title 15, unless otherwise noted.

14

. . . shall be notified of the specific reason(s) for the rejection or cancellation of the appeal and of the correction(s) needed for the rejected appeal to be accepted." (*Id.*, subd. (b)(3).)

An appeal may be "rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator." (§ 3084.6, subd. (a).) There is no requirement in either subsection (b) or (c) of section 3084.6 that an appeal must be submitted through a particular mail delivery system. However, an appeal may be rejected (and thus resubmitted) if an inmate submits an "incomplete" appeal, such as not providing a signature or date as required (*id.*, subd. (b)(13)), or if the inmate has not submitted an "appeal on the departmentally approved appeal forms" (*id.*, subd. (b)(14)).

In addition, an appeal may be canceled—such as occurred in the instant case with respect to Andres's February 17 appeal—if the "[t]ime limits for submitting the appeal are exceeded even though the inmate . . . had the opportunity to submit within the prescribed time constraints." (§ 3084.6, subd. (c)(4).) Once an appeal is canceled, it cannot be accepted "except pursuant to subsection 3084.6(a)(3)" (*id.*, subd. (e)), which provides: "At the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review."

Finally, subsection 3084.8 sets forth the applicable times limits for an administrative appeal. An inmate or parolee must submit an appeal "within 30 calendar days of: [¶] (1) The occurrence of the event or decision being appealed, or; [¶] (2) Upon first having knowledge of the action or decision being appealed, or; [¶] (3) Upon

15

receiving an unsatisfactory departmental response to an appeal filed." (§ 3084.8, subd. (b).) The time limits for reviewing an appeal commences "upon the date of receipt of the appeal form by the appeals coordinator." (*Id.*, subd. (a).) Once submitted, for a first level response all appeals shall be responded to and returned to the inmate or parolee "within 30 working days from date of receipt by the appeals coordinator," absent circumstances inapplicable here. (*Id.*, subd. (c)(1).)

C. *Analysis*

Focusing solely on Andres's January 25 appeal, we conclude substantial evidence in the record supports the finding of the court that Andres, whom the court found credible, submitted that appeal on or about January 25, as he testified and as reflected on the 602 appeal form itself; and that, as such, his appeal was timely pursuant to section 3084.8, subsection (b)(1), inasmuch as the incident that was the subject of the appeal occurred on January 20, 2013.

We further conclude there is substantial evidence in the record to support the court's finding that Andres's use of institutional mail was an accepted method for an inmate at RJDCF to file an administrative appeal. Indeed, Olson testified at the August 22 evidentiary hearing that the appeals office received and processed administrative appeals not only via the secure collection boxes but also through institutional mail and though personal delivery of appeals by staff.

In addition, we note the appeal pamphlet given to inmates to assist them in preparing administrative appeals does *not* state an inmate was *required* to use the secure collection boxes when submitting an administrative appeal, but rather merely provides

16

that an inmate must "mail" his or her completed form 602 to the local appeals coordinator.

Moreover, court exhibit 12, the "Operational Plan #3" prepared by the warden of RJDCF in April 2012, also does not support RJDCF's contention that Andres was *required* to submit his January 25 appeal through a secured collection box. Exhibit 12 instead appears to be merely an attempt by the warden to standardize the collection, delivery and processing of inmate appeals. There is no language in exhibit 12 stating an inmate was required to use the secured collection boxes in lieu of any other type of mail or delivery system in submitting an administrative appeal. In any event, it does not appear that inmates of RJDCF received a copy of exhibit 12.

With regard to exhibit 30 that was included by RJDCF in its response to Andres's opposition to the motion for consideration, as noted the evidence clearly showed that the RJDCF appeals office accepted administrative appeals submitted through institutional mail and by personal delivery. Thus, to the extent there was a policy allegedly in place requiring submission of appeals through a secured collection box, we note in practice appeals were submitted and accepted by other means.

Finally, RJDCF's position that an inmate was required to use a secure collection box to submit an administrative appeal is undermined by RJDCF's position that such an appeal must be *received* in the appeals office before the expiration of 30 days from the incident being appealed. Olson testified this policy prevented an inmate from "backdating" an appeal. However, because appeals placed in the secured collection box are logged in by the sergeant and then delivered to the appeals office, it would be

17

impossible for an inmate to backdate an appeal if an inmate was required to use a secured collection box, as RJDCF contends. In our view, using the date an appeal is *received* to determine timeliness shows an inmate can submit an administrative appeal through means *other than* a secured collection box.

Further, we independently conclude there is no requirement in the applicable regulations that an inmate must submit an administrative appeal through a secured collection box or similar system, or frankly, through any specific type of mail or delivery system, in order for the appeal to be deemed properly submitted. Rather, section 3084.8, subsection (b) merely provides that an inmate "must submit the appeal within 30 calendar days of . . . [t]he occurrence of the event or decision being appealed." Here, the record shows Andres timely submitted his January 25 appeal when he mailed it that same day to the appeals coordinator via institutional mail.

According to RJDCF, because Andres did not use the secure collection box to submit his January 25 appeal he is essentially estopped from claiming he timely submitted the appeal because there was no way for the appeals office to track his appeal and because the appeals office never received it. We note, however, that according to Olson, the appeals office on a typical day received anywhere from 20 to 40 administrative appeals. As the court thus noted, through no fault of RJDCF it was not altogether surprising, particularly given the sheer number of appeals being filed, that an appeal timely submitted through institutional mail went missing.

In any event, we decline under the circumstances of this case to adopt a rule placing the risk of loss of Andres's January 25 administrative appeal on Andres when the

18

court found him credible and found he timely submitted the appeal and mailed it through proper means. Indeed, the record shows Andres was so concerned his January 25 appeal would be mishandled that he submitted another appeal on February 19 regarding the *same* January 20 incident. Andres testified he did so because he was aware other RJDCF inmates in the past had experienced problems obtaining review of an administrative appeal. When Andres received no response to either appeal, he complained to the chief of appeals by way of his March 23 statement.

In light of the evidence in the record, the fact the applicable regulations do not require an inmate to use any specific mail procedure to submit an administrative appeal and the fact that RJDCF's own procedures allowed inmates to use means other than a secure collection box to submit an appeal, we conclude that the court properly found Andres's January 25 appeal was timely filed.[4]

In light of our decision, we deem it unnecessary to decide whether Andres's separate appeal of the January 20 incident, which he submitted on February 19, was also timely. (See, e.g., *Houston v. Lack* (1988) 487 U.S. 266, 271, 276 [noting the prison-delivery or mailbox rule provides that a document is constructively filed when a prisoner properly delivers the document to prison officials for forwarding to the court].) As such, we also deem it unnecessary to decide whether the court erred when it found Andres was excused from appealing the cancelation of his February 19 appeal because that appeal would have been "futile."

---

[4] Like the trial court, we offer no opinion regarding the merits, or lack thereof, of Andres's January 25 appeal.

DISPOSTION

The order granting Andres's petition is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

McINTYRE, J.