Filed 11/21/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re RAYMOND LOUIS LAMBIRTH,<br><br>    on Habeas Corpus. | H041812<br>(Monterey County<br> Super. Ct. No. HC8368) |

Petitioner Raymond Louis Lambirth seeks habeas relief directing California's Department of Corrections and Rehabilitation (CDCR) to rescind its cancellation of his administrative appeal as untimely and to consider it on the merits. Lambirth submitted his appeal within the 30-day period, but the CDCR cancelled his appeal because it had received his appeal after the expiration of the 30-day period. We hold that the CDCR may not deem a prisoner's appeal untimely when the appeal was submitted within the 30-day period even if the CDCR received the appeal after the expiration of the 30-day period. Accordingly, we grant the requested relief.

## I. Background

Lambirth is serving a life term at the Correctional Training Facility in Soledad, California (CTF). His petition alleges that he learned during his March 2013 pre-annual interview that he was subject to a "child visiting restriction." He complained to his correctional counselor, Ms. Miley, that it was unwarranted. (See Cal. Code Regs., tit. 15,

---

[*]     Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of sections II.D, II.E, and II.F.

§ 3173.1.)[1]  Miley promised to investigate the matter and to remove the restriction if it was without basis.  Based on her assurances, Lambirth waived attendance at his 2013 annual review.

 "Just prior" to his March 25, 2014 annual review, Lambirth learned that the restriction remained in place.  He raised the issue at the annual review, and the classification committee assured him that Miley would investigate the matter and take appropriate action.  Lambirth sent Miley a follow-up note on April 13, 2014.  The note asked for a copy of the action removing the restriction or, if it had not been removed, for a copy of the committee "chrono" from his 2014 annual review.[2]  On April 22, 2014, Lambirth received from Miley "a single-page copy" of the classification chrono from his October 30, 2009 program review.  The page that he received noted his "sex offense history" and in the space for "Sex Offenses" included reference to "(CYA 1974) PC 288A, Sexual Perversion."  The chrono stated, "Per [§] 3173.1, restricted to non-contact visits with minors."  It also referenced a "through [*sic*] discussion with him" and stated that "[a]t the conclusion of the review, LAMBIRTH was informed of his Appeal Rights with regards to this committee's actions.  LAMBIRTH acknowledged his understanding [of] and agreement with [the] committee's actions."

 Lambirth prepared an administrative appeal challenging the restriction immediately after he received Miley's response.  His pro se appeal explained that the 2009 chrono "contains significant error.  I was never charged with such a crime in 1974, and no evidence exists to support that assertion.  Title 15, section 3173(b) outlines the relevant criteria for a child visiting restriction; it lists several Penal Code sections, and states [that] inmates convicted of any of them when the victim is a minor [are] subject to the

---

[1]     Subsequent undesignated section references will be to this title of the regulations.

[2]     A "chrono" "'is used to document information about inmates and inmate behavior. Such information may include . . . records of disciplinary or classification matters . . . .' (§ 3000.)"  (*In re Cabrera* (2013) 216 Cal.App.4th 1522, 1526, fn. 4.)

2

restriction. I have never been convicted of any listed charge, nor have I ever been charged with any sexual crime against a child." Lambirth asked prison officials to "[r]emove the erroneous information from my file and remove the visiting restriction complained of . . . ."

Lambirth submitted his appeal "via intrainstitutional mail" on April 23, 2014. This was one day after he received Miley's response and 29 days after his March 25, 2014 annual review. CTF stamped the appeal "RECEIVED APR 25, 2014 CTF-Appeals." This was 31 days after Lambirth's annual review. CTF cancelled the appeal pursuant to section 3084.6, subdivision (c)(4) because "[t]ime limits for submitting the appeal are exceeded . . . ." (Italics and boldface omitted.)

Lambirth challenged the cancellation. He argued that his appeal was timely under section 3084.8 because he "submitted" it within 30 days of the action complained of. He also contended that the appeal was timely under section 3084.6 because the visiting restriction was "ongoing." CTF's second-level response stated that "the issue under appeal, visiting restrictions, took place during his annual review on 03/25/2014. This action was taken thirty-one (31) days before the appeal was received in the Inmate Appeals Office." "Appellant had Thirty (30) days after the action taken to appeal the issue" and "failed to follow directions as stated on the CDCR 128-G Form[3] and the regulations . . . ."

Lambirth challenged CTF's second-level response. The third-level response from the CDCR stated that "departmental rules require that appeals are *received* by the Appeals Office within 30 days, [*sic*] to utilize the date put on a CDCR Form 602, Inmate/Parolee Appeal Form by an appellant would create unenforceable time limits." (Italics added.)

---

[3] The form number appears to be an error. There are no directions on the form 128-G classification chrono. However, the form 602 "Inmate/Parolee Appeal" says, "You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead [*sic*] to the filing of this appeal."

The CDCR also rejected Lambirth's alternative argument. It asserted that "the appeal was concerning classification action taken during [Lambirth's] Annual Review on March 25, 2014," so "[t]he issue is . . . not considered ongoing, as there was a clear date of occurrence."

Lambirth unsuccessfully petitioned the superior court for a writ of habeas corpus. The court ruled that the evidence indicated that CTF's appeals office received Lambirth's appeal 31 days after his annual review, while section 3084.8 required him to "'submit the appeal within 30 calendar days of . . . [t]he occurrence of the event or decision being appealed' . . . ." "CTF either took or renewed the challenged classification action at the time of the review and petitioner appeared at the review. CTF acted in accord with regulations in rejecting the appeal."

Lambirth filed an original petition for a writ of habeas corpus in this court on December 31, 2014. We requested and received an informal response from the Attorney General, and Lambirth filed a reply. We appointed counsel for Lambirth and ordered the Director of the CDCR to show cause why Lambirth was not entitled to the relief requested. The Attorney General filed a return, and Lambirth filed a traverse.

Lambirth's request for habeas relief was pending in this court when the time for his 2015 annual review arrived. At his April 7, 2015 pre-annual interview with his correctional counselor, Ms. Palmer, and at the April 14, 2015 annual review, Lambirth again raised the visiting restriction issue. When the restriction was not removed, he submitted a new appeal on May 3, 2015. Prison officials cancelled that appeal "due to missed time constraints," and Lambirth challenged the cancellation. The cancellation was upheld at the second level of review because the visiting restriction was "imposed on the appellant pursuant to a committee action dated 10/30/09." The CDCR's third-level response stated that "[p]ursuant to departmental regulations, an appellant must submit the appeal within 30 calendar days of the event or decision being appealed. The appellant appeared before the Unit Classification Committee on October 30, 2009, when the non-contact visiting

4

restriction was applied. The visiting restriction was applied on a specific date and is not considered ongoing. Relief in this matter at the Third Level of Review is not warranted."

## II. Discussion

Lambirth contends that the cancellation of his 2014 appeal was based on prison officials' misinterpretation of the relevant regulations. We agree.

## A. Standard of Review

The parties do not specifically address what standard of review applies, although Lambirth suggests that the proper standard is whether CTF's cancellation of his appeal and the CDCR's subsequent denial of his challenge to the cancellation were arbitrary, capricious, and without any reasonable basis. That standard applies to appellate review of quasi-legislative rules promulgated by an agency. (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415; see *Motion Picture Studio Teachers & Welfare Workers v. Millan* (1996) 51 Cal.App.4th 1190, 1196 ["The adoption, amendment and vacation of rules and regulations are quasi-legislative acts."].) We are not reviewing an agency's adoption of quasi-legislative rules here.

At issue here is prison authorities' interpretation of an existing regulation. (See *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 (*Carmona*).) "In reviewing such an agency decision a court must determine whether the administrative agency applied the proper legal standard to the evidence before it. [Citation.] The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law [citations], and while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts. [Citations.]" (*Id.* at p. 310.)

" 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to

5

the circumstances of the agency action.'  [Citation.]"  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 8 (*Yamaha*).)

## B.  The Regulatory Scheme

An inmate who disagrees with a classification committee decision "may file an inmate grievance via the CDCR Form 602 appeal process . . . ."  (§§ 3173.1, subd. (g); 3084.1, subd. (a).)  "An inmate . . . has the right to file one appeal every 14 calendar days . . . ."  (§ 3084.1, subd. (f).)  Inmates may "submit" their appeals by mail.  (*In re Andres* (2016) 244 Cal.App.4th 1383, 1392 (*Andres*).)  They must "submit" appeal documents in a single mailing.  (§ 3084.2, subd. (b)(2).)

The inmate "shall use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested."  (§ 3084.2)  Inmates must "adhere to appeal filing time constraints as defined in section 3084.8."  (§ 3084.1, subd. (g).)  The inmate "must submit the appeal within 30 calendar days of:  [¶]  (1) The occurrence of the event or decision being appealed, or;  [¶]  (2) Upon first having knowledge of the action or decision being appealed, or;  [¶]  (3) Upon receiving an unsatisfactory departmental response to an appeal filed."  (§ 3084.8, subd. (b)(1), (2), (3).)

"Time limits for reviewing appeals shall commence upon the date of receipt of the appeal form by the appeals coordinator."  (§ 3084.8, subd. (a).)  All appeals must be responded to and returned to the inmate by staff within time limits specified in the regulations.  (§ 3084.8, subd. (c).)  "An appeal may be cancelled for any of the following reasons, which include, but are not limited to:  [¶] . . . [¶]  (4) Time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints.  In determining whether the time limit has been exceeded, the appeals coordinator shall consider whether the issue being appealed occurred on a specific date or is ongoing.  If the issue is ongoing, which may include but

6

is not limited to continuing lockdowns . . . or an ongoing program closure, the inmate . . . may appeal any time during the duration of the event . . . ." (§ 3084.6, subd. (c)(4).) "[A] cancellation or rejection decision does not exhaust administrative remedies." (§ 3084.1, subd. (b).)

## C. Interpretation of the Regulations

Prison officials interpreted the regulations to mean that an inmate appeal is not timely unless it is *received* by CTF's appeals office within 30 calendar days of the event or decision being challenged. But the regulations speak in terms of *filing* and *submission* of an inmate appeal. (E.g., §§ 3173.1, subd. (g) [inmates may "file a grievance"], 3084.1, subd. (g) [inmates must "adhere to appeal filing time constraints"], 3084.8, subd. (b)(1) [an inmate "must submit the appeal within 30 calendar days"], 3084.2, subd. (b)(2) [inmates "shall submit their appeal documents in a single mailing"], 3084.2 ["Appeal Preparation and Submittal"], 3084.6, subd. (c)(4) [an appeal may be cancelled if "[t]ime limits for submitting the appeal are exceeded"].) The CDCR's operations manual similarly refers to the filing and submission of appeals. (CDCR Operations Manual, Article 53 [Inmate/Parolee Appeals (Rev. 7/29/11)], § 54100.16 [Fixed Time Limits], p. 530 [inmate appeals must be "filed within 30 calendar days of the occurrence of the event or decision being appealed or of the inmate or parolee's knowledge of the action or decision being appealed . . . ."], § 54100.6 [Appeal Preparation], p. 525 ["The inmate . . . shall not delay submitting an appeal within established time limits if unable to obtain supporting documents . . . ."].)

"Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies." (*Cal. Drive-In Restaurant Assn. v. Clark* (1943) 22 Cal.2d 287, 292.) "Our primary aim is to ascertain the intent of the administrative agency that issued the regulation." (*Butts v. Board of Trustees of the California State Univ.* (2014) 225

7

Cal.App.4th 825, 835 (*Butts*).) "We start with an analysis of the plain language of the regulation." (*Ibid.*) "We give the regulatory language its plain, commonsense meaning. If possible, we must accord meaning to every word and phrase in the regulation, and we must read regulations as a whole so that all of the parts are given effect." (*Ibid.*) Courts "often resort to dictionaries in construing the language of statutes and regulations." (*County of Sacramento v. State Water Resources Control Bd.* (2007) 153 Cal.App.4th 1579, 1592.) "If the plain language . . . is clear and unambiguous, our task is at an end and there is no need to resort to the canons of construction or extrinsic aids to interpretation." (*Butts*, at p. 838.) When the intent cannot be discerned from the language of the regulation, " ' "we may look to a variety of extrinsic aids, including the purpose of the regulation, the legislative history, public policy, and the regulatory scheme of which the regulation is a part. [Citation.]" [Citation.]' " (*Butts*, at p. 837.)

 Although "submit" and "file" may have different meanings in certain contexts, the regulations at issue here use the terms "submit" and "file" interchangeably.[4] And the timeliness provision explicitly requires an inmate to "submit" an administrative appeal within 30 calendar days of the event or decision complained of. (§ 3084.8, subd. (b)(1).) Under these circumstances, it is clear that the regulations did not intend to distinguish between the submission and the filing of an appeal.

 "Submit" is not defined in the regulations. Merriam-Webster's Collegiate Dictionary defines the verb "submit" as "to present or propose to another for review, consideration, or decision." (Merriam-Webster's Collegiate Dict. (11th ed. 2009) p. 1244.) Webster's Third New International Dictionary similarly defines "submit" as "to send or commit for consideration, study, or decision." (Webster's 3d New Internat. Dict. *supra*, p. 2277.)

---

[4]   "File" can have a narrower meaning. Webster's Third New International Dictionary (1993) at page 849 defines "file" as "to deliver (as a legal paper or instrument) after complying with any condition precedent (as the payment of a fee) to the proper officer for keeping on file or among the records of his office."

8

We conclude from these definitions that the plain, commonsense meaning of "submit" entails sending rather than receipt. Such an interpretation is consistent with the regulation authorizing inmates to "submit" their appeals by mail. (*Andres*, *supra*, 244 Cal.App.4th at p. 1392; § 3084.2, subd. (b)(2).) It is also consistent with the directions on the CDCR form 602 (Inmate/Parolee Appeal), which tell the inmate, "[y]ou must *send* this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead [*sic*] to the filing of this appeal." (Italics added.) Furthermore, the prison delivery rule provides that an inmate's delivery of a document to prison authorities is deemed a constructive *filing* of the document. In *People v. Slobodion* (1947) 30 Cal.2d 362, 367 (*Slobodion*), our high court held that a pro se inmate's notice of appeal from his criminal conviction was constructively filed when he *delivered* it to prison authorities for forwarding five days before the statutory deadline, notwithstanding that the court clerk received it six days after the deadline. (*Id.* at pp. 366-367.) The court noted that the inmate was "by reason of his imprisonment" and pro se status "wholly dependent on the prison employees for effecting the actual filing" and "[o]bviously . . . powerless to prevent any delay which might ensue after he delivered . . . his notice of appeal" to them for forwarding to the court. (*Id.* at pp. 366.) The *Slobodion* court also stated that "[w]hile in perfecting his appeal 'a convicted defendant serving a term of imprisonment . . . has no greater or additional rights because he is acting as his own attorney than if he were represented by a member of the bar' [citation], neither . . . will he be deemed to have fewer rights." (*Id.* at p. 367.) The court observed that a contrary conclusion would deny the inmate equal protection of the law. (*Slobodion*, at p. 368.)

In *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106 (*Silverbrand*), the California Supreme Court extended the prison delivery rule to appeals in civil cases, finding "no sound basis" for maintaining one rule for criminal appeals and another for civil appeals. (*Id.* at p. 110.) It explained that "the United States Supreme Court rules do

9

not distinguish between civil and criminal cases and instead apply the federal 'prison mailbox rule' to the filing of *any* document." (*Id.* at p. 122.) Other state and lower federal courts had followed suit by extending the prison delivery rule "to a broad range of filings by self-represented prisoners, including complaints, petitions for postconviction relief, motions, and other filings." (*Id.* at pp. 123-124, fns. omitted.)

 In *Andres*, the Court of Appeal extended the prison mailbox rule to a pro se inmate's filing of an administrative appeal. (*Andres*, *supra*, 244 Cal.App.4th at p. 1396.) Andres testified at an evidentiary hearing that he put his administrative appeal into an envelope addressed to the prison appeals coordinator and "mailed it via institutional mail between 4:30 and 8:30 p.m. on January 25," which was five days after the incident complained of. (*Id.* at p. 1387.) He received no response. Concerned that the first appeal would be mishandled, Andres mailed another appeal to the warden on February 19, this time using "legal mail." (*Ibid.*) The warden forwarded that appeal to the appeals office, which received it on March 1 and cancelled it as untimely. (*Andres*, at p. 1390.) The appeals coordinator testified that the timeliness of inmate appeals was determined by the date they were received "because otherwise 'inmates [could] backdate their appeals.'" (*Id.* at p. 1389.) He testified that the appeals office never received Andres's January 25 appeal and that it cancelled the February 19 appeal because "it was 'mailed' per the log . . . more than 30 days after the January 20 incident" complained of. (*Andres*, at pp. 1386, 1390.)

 The trial court concluded that the January 25 appeal was timely filed when Andres "'put it in the mailbox within 30 days'" of the action complained of. (*Andres*, *supra*, 244 Cal.App.4th at p. 1391.) The Court of Appeal affirmed, concluding that substantial evidence supported the trial court's finding. (*Id.* at p. 1395.) The court "independently conclude[d]" that there is "no requirement in the applicable regulations that an inmate must submit an administrative appeal through a secured collection box or similar system, or frankly, through any specific type of mail or delivery system, in order for the appeal to be deemed properly submitted. Rather, section 3084.8, subdivision (b) merely provides

10

that an inmate 'must submit the appeal within 30 calendar days of . . . [¶] . . . [t]he occurrence of the event or decision being appealed.'" (*Andres*, at p. 1396.) The court concluded that "Andres timely submitted his January 25 appeal when he mailed it that same day to the appeals coordinator via institutional mail." (*Ibid*.)

We agree with the result in *Andres* and find it consistent with both the regulatory language and the rationale underlying the prison delivery rule. We conclude that the uncontradicted evidence in this case compels the same result. The Attorney General affirmatively admits in her return that "on or around April 23, 2014, Lambirth submitted an administrative appeal requesting removal of the child visiting restriction, which was received by the appeals office on April 25, 2014." Lambirth's sworn declaration unambiguously states that he submitted his appeal via intrainstitutional mail on April 23, 2014. Under the prison delivery rule, Lambirth's appeal was timely submitted within the 30-day period contemplated by the regulations. (*Silverbrand*, *supra*, 46 Cal.4th at p. 110; § 3084.8, subd. (b)(1).)[5] Prison officials misinterpreted the regulations when they concluded otherwise.

## D. Mootness

The Attorney General contends that prison officials' rejection of Lambirth's 2015 appeal as untimely renders the present petition moot. We disagree.

A case is moot when the petitioner has already obtained the relief requested. (E.g., *In re Jesus G.* (2013) 218 Cal.App.4th 157, 174-175 [petition seeking inmate's immediate release moot upon his release].) That is not the situation here. Lambirth has not already

---

[5] Our conclusion makes it unnecessary for us to address Lambirth's alternative argument that his administrative appeal was timely because the visiting restriction qualifies as an "ongoing" issue that can be appealed at "any time during the duration of the event." (§ 3084.6, subd. (c)(4).)

received the relief he seeks because prison officials have to date refused to consider the merits of his challenge to the visiting restriction.

A case is also moot when an event occurs that renders it impossible for the reviewing court to grant the parties any effectual relief. (E.g., *Consolidated Vultee Aircraft Corp. v. United Automobile* (1946) 27 Cal.2d 859, 863 [petition seeking confirmation of arbitration award moot where new collective bargaining agreement superseded agreement that was to be amended under the award.].) That is also not the situation here. We cannot deny Lambirth's habeas petition on mootness grounds based on the CDCR's 2015 decision because the CDCR has not established that it properly cancelled Lambirth's 2015 appeal. The petition before us concerns the CDCR's 2014 decision. The petition obviously raises no issues about the propriety of the CDCR's later decision to cancel Lambirth's 2015 appeal based in part on its determination that the visiting restriction was not "ongoing." Our order to show cause did not address the issue of whether the restriction was "ongoing." Thus, that question is not before us and cannot be resolved in this proceeding. We therefore decline to adjudge Lambirth's petition moot.

### E. Due Process

The Attorney General argues that Lambirth's habeas petition should be denied because "habeas jurisdiction has not been extended to provide relief from an appeals coordinator's discretionary decision to cancel a prisoner's administrative appeal." We reject the argument.

"The right to file a petition for a writ of habeas corpus is guaranteed by the state Constitution (Cal. Const., art. I, § 11) and regulated by statute ([Pen. Code,] § 1473 et seq.)." (*In re Harris* (1993) 5 Cal.4th 813, 824-825.) The writ originally served the "limited purpose of releasing a person imprisoned or restrained as a result of a void proceeding or jurisdictional defect in the imprisoning authority . . . ." (*In re Jackson* (1964) 61 Cal.2d 500, 503.) "Historically, the function of the writ has been hugely

12

expanded." (*Ibid..*) "The California courts have used the writ not only to test jurisdiction, but also to protect the fundamental basic rights of prisoners." (*In re Riddle* (1962) 57 Cal.2d 848, 851.) "[A] writ of habeas corpus may be sought to inquire into alleged restraints upon a prisoner's activities which are not related to the validity of the judgment or judgments of incarceration, but which relate 'solely to a matter of prison administration.' [Citation.]" (*In re Ferguson* (1961) 55 Cal.2d 663, 669 (*Ferguson*).) "Even though incarceration in a state prison brings about the loss of numerous legal rights [citations], and the necessary curtailment of freedoms because of incarceration [citation], a prisoner remains 'under the protection of the law' [Citation.] He . . . has a right not to be treated unreasonably considering the circumstances." (*Ibid*.)

Here, we have concluded that prison officials misinterpreted their own regulations setting forth time limits for submitting administrative appeals. As a result of the misinterpretation Lambirth has been denied access to the administrative appeals process. The cancellation of his administrative appeal in turn prevents him from exhausting his administrative remedies. (§ 3084.1 ["a cancellation . . . decision does not exhaust administrative remedies"].) The inability to exhaust his administrative remedies in turn deprives him of his due process right of reasonable access to the courts. (See *In re Allison* (1967) 66 Cal.2d 282, 288-289.) In these circumstances, Lambirth is not precluded from proceeding by habeas petition. (See *Ferguson*, *supra*, 55 Cal.2d at p. 669.)

The Attorney General's reliance on *In re Williams* (2015) 241 Cal.App.4th 738 (*Williams*) is misplaced. There was no claim in *Williams* that prison officials failed to comply with the regulations governing inmate administrative appeals. It was Williams who repeatedly failed to comply with those regulations even after prison officials warned him that his lost-property appeal could be cancelled if he continued to ignore the regulatory requirements. (*Id.* at p. 741.) The Court of Appeal denied his habeas petition, holding that inmates do not have a liberty interest in how their administrative appeals are

13

decided as they " 'lack a separate constitutional entitlement to a specific prison grievance procedure.' [Citations.]" (*Id.* at p. 743.)

*Williams* is inapposite here. The issue in this case is not whether prison officials must provide a specific prison grievance procedure. The issue is whether, having chosen to provide a specific procedure, they must properly interpret and comply with the regulations that govern it. We conclude that they must.


### F. Discretion

The Attorney General contends that even if Lambirth has a due process right in how his administrative appeal is processed, he has not shown that prison officials' decision to cancel his appeal as untimely was outside the scope of their discretion under the regulations. We disagree. Prison officials do not have discretion to violate or misinterpret governing regulations. (See *Slobodion*, *supra*, 30 Cal.2d at p. 368.) Here, prison officials' interpretation of the regulations was inconsistent with the plain language of the regulations and thus not entitled to judicial deference. (See *Carmona*, *supra*, 13 Cal.3d at p. 310; *Yamaha*, *supra*, 19 Cal.4th at p. 12.) To the extent their misinterpretation was based on "departmental rules" requiring that appeals be received by the appeals office within 30 days, those rules cannot trump the plain language of the specific regulation governing time limits for submitting administrative appeals. (§ 3084.8, subd. (b)(1).)

The Attorney General's reliance on *Menefield v. Foreman* (2014) 231 Cal.App.4th 211 (*Menefield*) is misplaced. In *Menefield*, the court held that, because prison appeals coordinators "exercise discretion when determining if an appeal is duplicative of an earlier appeal" (see § 3084.6, subd. (c)), they did not abuse that discretion when they cancelled an inmate's group appeal on the ground that it overlapped significantly with and was therefore duplicative of an earlier appeal. (*Menefield*, at p. 214.) *Menefield* does not hold that appeals coordinators exercise discretion in determining whether an appeal

14

was submitted within 30 calendar days of the action complained of. "Obviously, cases are not authority for propositions not considered therein." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372.)

## III.  Disposition

The petition is granted.  The CDCR is directed to (1) vacate the decision cancelling Lambirth's administrative appeal from the action taken at his March 25, 2014 annual review and the decisions upholding the cancellation at the second and third levels of review, and (2) consider the administrative appeal on the merits.[6]

_____
Mihara, J.

WE CONCUR:

_____
Elia, Acting P. J.

_____
Bamattre-Manoukian, J.

---

[6]      We express no opinion about the merits of Lambirth's administrative appeal.

15

| | |
|---|---|
| Trial Court: | Monterey County Superior Court |
| Trial Judge: | Honorable Mark E. Hood |
| Attorney for Petitioner: | Michael Satris<br>Law Office of Michael Satris<br>Under Appointment by the Sixth<br>District Court of Appeal |
| Attorneys for Respondent: | Kamala D. Harris<br>Attorney General of California<br><br>Jennifer A. Neill<br>Senior Assistant Attorney General<br><br>Julie A. Malone<br>Supervising Deputy Attorney General<br><br>Amanda Lloyd<br>Deputy Attorney General<br><br>Denise Yates<br>Deputy Attorney General |

*In re Lambirth*
H041812