Filed 5/24/17  Certified for publication 6/5/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN DiCARLO et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF MONTEREY et al.,<br><br>     Defendants and Respondents. | H041400<br>(Monterey County<br>Super. Ct. No. M90970) |

## I.  INTRODUCTION

Defendant County of Monterey entered into a memorandum of understanding (MOU) with the Monterey County Deputy Sheriffs Association (Sheriffs Association). The terms of the MOU included a longevity performance stipend that provided that a member of the Sheriffs Association who achieved 20 years of service with the County of Monterey and a satisfactory or outstanding performance evaluation could receive an additional stipend of up to eight percent.  Plaintiffs are members of the Sheriffs Association who either received the longevity performance stipend prior to their retirement, are currently receiving the longevity performance stipend, or anticipate receiving it in the future.

Plaintiffs brought the instant action against the County of Monterey and its Board of Supervisors (hereafter collectively the County), the County of Monterey Sheriff's

Office (Sheriff's Department)[1] and individual defendants, and also against defendants California Public Employees Retirement System (CalPERS) and CalPERS's Board of Administration. Plaintiffs sought peremptory writs of mandamus to compel the County to report the longevity performance stipend to CalPERS as an item of special compensation and to compel CalPERS to include the longevity performance stipend in calculating their retirement benefits. The trial court ruled as a matter of law that the longevity performance stipend was not reportable to CalPERS as an item of special compensation under California Code of Regulations, title 2, section 571, subdivision (a), and granted the County's motion for summary adjudication of issues and CalPERS's motion for judgment on the pleadings.

On appeal, plaintiffs contend that the trial court erred because California Code of Regulations, title 2, section 571, subdivision (a) is properly interpreted to include the longevity performance stipend as a reportable item of special compensation. We recognize the importance of this CalPERS retirement benefit issue to the plaintiffs. However, as we will further explain, under the rules governing the interpretation of statutes and regulations we determine that the longevity performance stipend does not qualify as an item of special compensation that must be reported to CalPERS and included in the calculation of plaintiffs' retirement benefits. Therefore, we will affirm the judgments in favor of the County and CalPERS.

## II. FACTUAL BACKGROUND

In 2001 the County entered into a MOU with the Sheriffs Association. The terms of the MOU included a longevity performance stipend, which stated: "Effective the first full period after July 1, 2000, unit members who have earned twenty (20) years of County service shall be eligible to receive a performance stipend of four percent (4%) upon

---

[1] We will refer to the County of Monterey Sheriff's Office as the Sheriff's Department for consistency with the parties' practice in the proceedings below.

2

receiving a satisfactory performance evaluation.  Employees shall be eligible to receive up to four percent (4%) additional stipend for outstanding performance."

A nearly identical longevity performance stipend was included in the 2006 to 2009 MOU, as follows:  "Unit members who have earned twenty (20) years of County service shall be eligible to receive a performance stipend of four percent (4%) upon receiving a satisfactory performance evaluation.  Employees shall be eligible to receive up to four percent (4%) additional stipend for outstanding performance."[2]

John DiCarlo and Richard Perez are retired peace officers who were employed by the County and the Sheriff's Department.   DiCarlo retired in 2006 and Perez retired in 2002.  Both DiCarlo and Perez were members of the Sheriffs Association.  They each received a longevity performance stipend of eight percent during their employment with the Department.

In 2008, James Bass and Michael Shapiro were employed as peace officers by the County and the Sheriff's Department.  At that time Bass had 13 years of service with the Sheriff's Department.  Shapiro was a member of the Sheriffs Association and began receiving an eight percent longevity performance stipend in 2007.

CalPERS provides pension fund retirement services for employees of the County and the Sheriff's Department.  The County has never reported the longevity performance stipend to CalPERS and therefore CalPERS has not included the longevity performance stipend as compensation in calculating the retirement benefits of the members of the Sheriffs Association.

---

[2] The successor 2011 to 2013 MOU replaced the longevity performance stipend with a six percent longevity stipend.

III.  PROCEDURAL BACKGROUND

A. *Petition for Writ of Mandamus*

In 2008 DiCarlo, Perez, Bass, and Shapiro (hereafter collectively plaintiffs) filed a first amended verified petition for writ of mandamus on behalf of themselves and others similarly situated against defendants the County, the Sheriff's Department, Lew Bauman (County's chief administrative officer), and Michael Miller (County's auditor-controller). Plaintiffs also named as defendants CalPERS and CalPERS's Board of Administration (hereafter collectively CalPERS).

Plaintiffs alleged that representatives of CalPERS had advised the County in 2006 that the longevity performance stipend provided in the MOU between the County and the Sheriffs Association should be reported to CalPERS.  However, Miller, the County's auditor-controller, advised DiCarlo that the longevity performance stipend was not subject to reporting to CalPERS because it was a combined benefit.

Attorneys for the Sheriffs Association corresponded with CalPERS regarding the longevity performance stipend and requested an opinion as to whether the County was required to report payment of the longevity performance stipend to CalPERS.  CalPERS responded in 2007 that the longevity performance stipend was not reportable because it was not available to all members of the group or class, since not all employees would receive a satisfactory performance rating.  CalPERS then denied the Sheriffs Association's demand for an appeal.

Plaintiffs further alleged that the County had a ministerial duty to report the longevity performance stipend to CalPERS pursuant to California Code of Regulations, title 2, section 571, subdivision (a)(1)[3] as incentive pay and as longevity pay.  Based on

---

[3] California Code of Regulations, title 2, section 571, subdivision (a)(1) provides in part:  "The following list exclusively identifies and defines special compensation items (continued)

4

these allegations, plaintiffs stated several causes of action generally asserting that the County had a duty to report the longevity performance stipend and make the appropriate retirement contributions to CalPERS, and CalPERS was obligated to include the longevity performance stipends that plaintiffs had earned or would earn in the future in calculating their retirement benefits.

As a remedy, plaintiffs sought writ relief. On behalf of DiCarlo and Perez and similarly situated retired class members, plaintiffs sought a peremptory writ of mandate compelling the County to retroactively and prospectively adjust their retirement contributions to include "all compensation earned as part of their 'Longevity/Performance Stipend.' "

Plaintiffs also sought a peremptory writ of mandate on behalf of DiCarlo and Perez and similarly situated retired class members compelling CalPERS to retroactively and prospectively adjust their retirement contributions and benefits to include "all compensation earned as part of their 'Longevity/Performance Stipend.' "

On behalf of Shapiro and similarly situated class members who were currently receiving the longevity performance stipend, plaintiffs sought peremptory writs of mandate to compel the County to report the longevity performance stipend to CalPERS, and to compel CalPERS to include the longevity performance stipend as compensation and retroactively and prospectively adjust their retirement contributions and benefits.

---

for members employed by contracting agency and school employers that must be reported to CalPERS if they are contained in a written labor policy or agreement: [¶] (1) INCENTIVE PAY [¶] Bonus - Compensation to employees for superior performance such as 'annual performance bonus' and 'merit pay'. If provided only during a member's final compensation period, it shall be excluded from final compensation as 'final settlement' pay. A program or system must be in place to plan and identify performance goals and objectives. [¶] . . . [¶] Longevity Pay - Additional compensation to employees who have been with an employer, or in a specified job classification, for a certain minimum period of time exceeding five years."

On behalf of Bass and similarly situated class members who were approaching 20 years of service, plaintiffs sought peremptory writs of mandate to compel the County to prospectively report the longevity performance stipend they may earn to CalPERS, and to compel CalPERS to ensure that the County reported the longevity performance stipend and to include the longevity performance stipend in adjusting their retirement contributions and benefits.

Further, plaintiffs sought a declaration that the County was obligated to report all longevity performance stipends being earned by Shapiro and other deputy sheriffs to CalPERS and to also report to CalPERS all longevity performance stipends that may be earned by Bass and other deputy sheriffs in the future.

County demurred to the first amended verified petition for writ of mandate on the ground that plaintiffs had failed to state a cause of action as to plaintiff Bass and similarly situated class members because they would not be entitled to receive the longevity performance stipend before expiration of the 2006 to 2009 MOU. The trial court determined that plaintiffs' allegations showed that it was uncertain as to whether Bass would serve 20 years and whether an MOU including a longevity performance stipend term would be in effect at that time. For that reason, in the December 11, 2008 ruling the trial court sustained the demurrers to the sixth, seventh, and eighth causes of action as to Bass and any others similarly situated without leave to amend.

**B.** *The County's Motion for Summary Judgment or Summary Adjudication*

The County filed a motion for summary judgment or summary adjudication of issues on the ground that the longevity performance stipend did not qualify as special compensation that was required to be reported to CalPERS under California Code of Regulations, title 2, section 571, subdivision (a) (hereafter, section 571), and therefore the County was entitled to judgment as a matter of law. CalPERS filed a joinder to the motion for summary judgment.

According to the County, the longevity performance stipend did not qualify as special compensation for several reasons: (1) the longevity performance stipend combined two elements, longevity and performance, into one stipend that was not included in section 571, subdivision (a)'s exclusive list of compensation items that qualify as reportable special compensation; (2) the longevity performance stipend required individualized, discretionary determinations and therefore was not available to all similarly situated members of the class, as required by Government Code section 20646, subdivision (c)(2)[4] and section 571, subdivision (b)(2); (3) determining that the longevity performance stipend qualified as special compensation at this late date would result in an unfunded liability for CalPERS; and (4) the County and employee representatives never agreed that the longevity performance stipend would be reported to CalPERS and included in CalPERS's retirement calculations.

Plaintiffs opposed the motion for summary adjudication of issues, arguing that the County had a duty to report the longevity performance stipend as special compensation because it combined bonus pay and longevity pay, which are both listed as items of special compensation under section 571, subdivision (a). They pointed out that section 571 did not prohibit employers from combining two items of special compensation, and argued that any ambiguity in section 571 should be construed in favor of pensioners. Plaintiffs also rejected the County's contention that the longevity performance bonus was not available to all similarly situated members of the class, asserting that it was available to all employees who satisfied the condition precedents of 20 years of service and a satisfactory or outstanding performance evaluation.

---

[4] Government Code section 20636, subdivision (c)(2) provides in part: "Special compensation shall be limited to that which is received by a member pursuant to a labor policy or agreement or as otherwise required by state or federal law, to similarly situated members of a group or class of employment that is in addition to payrate."

Further, plaintiffs argued that summary adjudication could not be granted because there were several factual disputes: (1) whether the longevity performance stipend would create an unfunded liability for CalPERS; (2) whether CalPERS considered the longevity performance stipend to be special compensation because CalPERS representatives had stated during discovery that the stipend was reportable to CalPERS as special compensation; and (3) the intent of the parties who negotiated the longevity performance stipend.

**C.** *Order Granting Summary Adjudication*

In a ruling filed on July 28, 2010, the trial court denied the motion for summary judgment because the County had not complied with California Rules of Court, rule 3.1350(b) with respect to its separate statement of facts and because CalPERS's filing of a mere joinder was improper. The trial court then issued a minute order dated August 19, 2010, in which the court denied the motion for summary adjudication of issues as to second, third, fourth and fifth causes of action. The court took the County's motion for summary adjudication of the first cause of action under submission.

On September 13, 2010, the trial court filed an order granting the County's motion for leave to file an amended answer and amended separate statement of facts. Thereafter, plaintiffs filed a motion "for clarification of ruling/reconsideration of ruling." The trial court heard the motion for clarification/reconsideration of ruling and issued a November 8, 2010 ruling on the issue of duty. The court found the County's interpretation of section 571, subdivision (a)(1), which precluded the reporting of the longevity performance stipend as special compensation to CalPERS, "would produce the more reasonable result and therefore must be adopted. [Citation.] The legislature intended that there be a simple, clear list of what is PERSable and what is not." The trial court also found that there were triable issues of fact as to (1) "Whether PERS has ever made a determination regarding the PERSability of this compensation"; (2) "Whether this

8

compensation, if PERSable, would result in an unfunded liability"; and (3) "Whether the parties intended the compensation to be PERSable."[5]

On January 21, 2011, the trial court filed an order granting County's motion for summary adjudication only as to the following issue of duty: "Monterey County's Longevity Performance Stipend (LPS) is not special compensation, in that [section 571] sets forth the exclusive list that identifies and defines what constitutes special compensation that must be reported to CalPERS, and there is no item on the list in [section 571] that combines longevity and performance elements as in the Monterey County LPS." The order also states that the "motion for summary judgment and/or summary adjudication is denied on all other grounds raised by the County."

### D. *The County's Motion for Judgment on the Pleadings*

In December 2011 the County filed a motion for judgment on the pleadings on the ground that the trial court had ruled that the longevity performance stipend did not qualify as special compensation under section 571. Plaintiffs filed opposition to the motion for judgment on the pleadings and also filed a motion for leave to file a second amended petition. The trial court denied the County's motion for judgment on the pleadings and granted plaintiffs' motion for leave to file a second amended petition in the July 18, 2012 order. The second amended verified petition for writ of mandamus added new causes of action for reformation of the MOU, rescission of the MOU, specific performance of the MOU, and breach of contract (MOU) as third party beneficiaries. Plaintiffs sought reformation and rescission of the terms of the MOU in order to separate the longevity and merit pay elements of the longevity performance stipend.

---

[5] Plaintiffs' appeal of the November 8, 2010 ruling was dismissed by this court as taken from a nonappealable order. (*DiCarlo v. County of Monterey*, H036882, August 24, 2011.)

9

**E.** *The County's Second Motion for Summary Adjudication of Issues*

After the second amended verified petition for writ of mandamus was filed, the County filed a second motion for summary adjudication of issues. The County contended that the first cause of action for writ of mandate compelling the County to report the longevity performance stipend to CalPERS, the third cause of action for declaratory relief, and the eighth cause of action for specific performance of the MOU lacked merit as a matter of law because the trial court had ruled that the longevity performance stipend did not constitute special compensation under section 571.

In addition, the County argued that as a matter of law plaintiffs lacked standing to assert the sixth cause of action for reformation of the MOU and the seventh cause of action for rescission of the MOU because only the Sheriffs Association and the County were parties to the MOU. Finally, as to the ninth cause of action for breach of contract, the County argued that the MOU did not require that the longevity performance stipend be reported to CalPERS and, even if it did, the breach would be excused since longevity performance earnings as a matter of law are not special compensation that must be reported to CalPERS.

In opposition to the motion for summary adjudication of issues, plaintiffs reiterated their argument that the longevity performance stipend constituted reportable special compensation under section 571, subdivision (a). In addition, plaintiffs argued that they had standing to seek reformation of the MOU because they were third party beneficiaries of the contract as members of the Sheriffs Association. Plaintiffs conceded that the seventh cause of action for rescission of the MOU lacked merit because they did not have standing to pursue that claim.

**F.** *Ruling on the County's Second Motion for Summary Adjudication of Issues*

The trial court filed a ruling on February 7, 2014, granting County's motion for summary adjudication of the first, third, fourth, seventh, eighth, and ninth causes of action, and denying summary adjudication of the sixth cause of action for reformation of

10

the MOU. The court found that triable issues of fact existed as to whether the MOU was intended to benefit plaintiffs.

On March 21, 2014, plaintiffs filed a request for dismissal without prejudice of the sixth cause of action for reformation. The dismissal was entered on March 26, 2014. As a result, no causes of action remained pending against the County.

### G. *CalPERS's Motion for Judgment on the Pleadings*

CalPERS filed a motion for judgment on the pleadings in April 2014. The motion was based on the trial court's January 21, 2011 ruling on the County's first motion for summary adjudication that the longevity performance stipend did not constitute special compensation under section 571, subdivision (a). CalPERS argued that pursuant to Code of Civil Procedure section 437c, subdivision (n)[6] the trial court's ruling was binding in all subsequent proceedings, and therefore CalPERS did not have a duty to compel the County to report the longevity performance stipend to CalPERS as an item of special compensation. Alternatively, CalPERS argued that plaintiffs' claims against CalPERS were barred because the primary purpose of their petition for writ of mandamus was the payment of money in the form of higher retirement benefits and they had failed to allege that they had complied with the Government Claims Act, Government Code section 900 et seq.

Plaintiffs opposed CalPERS's motion for judgment on the pleadings, arguing that their claims were not subject to the Government Code's claim filing requirements. However, plaintiffs conceded that they could not establish their claims against CalPERS

---

[6] Code of Civil Procedure section 437c, subdivision (n)(1) provides: "If a motion for summary adjudication is granted, at the trial of the action, the cause or causes of action within the action, affirmative defense or defenses, claim for damages, or issue or issues of duty as to the motion that has been granted shall be deemed to be established and the action shall proceed as to the cause or causes of action, affirmative defense or defenses, claim for damages, or issue or issues of duty remaining."

11

without a finding that the longevity performance stipend constituted special compensation under section 571.

**H.** *Order Granting CalPERS's Motion for Judgment on the Pleadings*

In a June 20, 2014 order the trial court granted CalPERS's motion for judgment on the pleadings and dismissed the causes of action against CalPERS. The court included two rulings in the order: (1) "Monterey County's Longevity Performance Stipend (LPS) is not special compensation pursuant to [section 571] and shall not be reported as special compensation to Defendant CalPERS"; and (2) "the type of claims asserted by Plaintiffs in this action" are not subject to the Government Claims Act, Government Code section 900 et seq.

## IV. DISCUSSION

Plaintiffs filed a notice of appeal from the June 20, 2014 order granting CalPERS's motion for judgment on the pleadings. Plaintiffs also filed a notice of appeal from the February 7, 2014 ruling granting the County's second motion for summary adjudication. This court directed plaintiffs to obtain a final judgment with respect to the ruling on the motion for summary adjudication and on September 25, 2015, a judgment was filed. This court on its own motion deemed the notice of appeal to be filed as of the date of judgment, September 25, 2015.

On appeal, plaintiffs contend that the trial court erred in granting the County's motion for summary adjudication and CalPERS's motion for judgment on the pleadings because section 571 is properly interpreted to include the longevity performance stipend as an item of special compensation that the County must report to CalPERS and that CalPERS must include in calculating their retirement benefits. Alternatively, plaintiffs contend there are triable issues of fact regarding the longevity performance stipend that preclude deciding the issue as a matter of law.

12

We will begin our evaluation of plaintiffs' contentions with the issue of whether the longevity performance stipend constitutes special compensation under section 571 as a matter of law, since we find that issue to be dispositive.

**A.** *Special Compensation under Section 571*

Since section 571 is a regulation promulgated by CalPERS's Board of Administration, we begin with a brief overview of that system. (See Gov. Code, § 20636, subd. (c)(6).) "The Public Employees' Retirement Law (PERL, Gov. Code, § 20000 et seq.) establishes PERS, a retirement system for employees of the state and participating local public agencies. PERS is a prefunded, defined benefit plan which sets an employee's retirement benefit upon the factors of retirement age, length of service, and final compensation. [Citation.] Retirement allowances are therefore partially based upon an employee's compensation. An employee's compensation is not simply the cash remuneration received, but is exactingly defined to include or exclude various employment benefits and items of pay. ([Gov. Code,] § 20022.) The scope of compensation is also critical to setting the amount of retirement contributions, because PERS is funded by employer and employee contributions calculated as a percentage of employee compensation. [Citation.]" (*Oden v. Board of Administration* (1994) 23 Cal.App.4th 194, 198.)

"Compensation reported by the employer to CalPERS 'shall not exceed compensation earnable, as defined in [Government Code] Section 20636.' (Gov. Code, § 20630, subd. (b).)" (*Tanner v. California Public Employees' Retirement System* (2016) 248 Cal.App.4th 743, 750 (*Tanner*).) Government Code section 20636, subdivision (a) states: " 'Compensation earnable' by a member means the payrate and *special compensation* of the member, as defined by subdivisions (b), (c), and (g), and as limited by Section 21752.5 [Internal Revenue Code compliance]." (Italics added.)

Subdivision (c) of Government Code section 20636 includes the following definition of special compensation: "Special compensation of a member includes a

payment received for special skills, knowledge, abilities, work assignment, workdays or hours, or other work conditions.  [¶]  Special compensation shall be limited to that which is received by a member pursuant to a labor policy or agreement or as otherwise required by state or federal law, to similarly situated members of a group or class of employment that is in addition to payrate. . . .  [¶] Special compensation shall be for services rendered during normal working hours and, when reported to the board, the employer shall identify the pay period in which the special compensation was earned."  (Gov. Code, § 20636, subd. (a)(1)-(3).)

Government Code section 20636, subdivision (c)(7) places express limits on special compensation:  "Special compensation does not include any of the following:  [¶] (A) Final settlement pay.  [¶]  (B) Payments made for additional services rendered outside of normal working hours, whether paid in lump sum or otherwise.  [¶]  (C) Other payments the [CalPERS Board of Administration] has not affirmatively determined to be special compensation."  (See *City of Pleasanton* (2012) 211 Cal.App.4th 522, 527 (*City of Pleasanton*).

Government Code section 20636 further provides that "[t]he [CalPERS Board of Administration] shall promulgate regulations that delineate more specifically and exclusively what constitutes 'special compensation' as used in this section."  (Gov. Code, § 20636, subd. (c)(6).)  Pursuant to that direction, CalPERS's Board of Administration promulgated section 571 in 1994.  (CalPERS Rulemaking File, Cal. Code Regs., title 2, sections 566.1, 570, 571, and 572, Noticed July 15, 1994, p. 17.)

Section 571, subdivision (a) expressly provides that the list of items that constitute special compensation that must be reported to CalPERS is exclusive:  "The following list *exclusively identifies and defines* special compensation items for members employed by contracting agency and school employers that must be reported to CalPERS if they are contained in a written labor policy or agreement."  (Italics added.)  Subdivision (c) of section 571 further emphasizes the exclusivity of the subdivision (a) list:  "Only items

14

listed in subsection (a) have been affirmatively determined to be special compensation. All items of special compensation reported to PERS will be subject to review for continued conformity with all of the standards listed in subsection (b)."[7]

We next determine whether, under the provisions of Government Code section 20636 and section 571, the longevity performance stipend at issue in this case constitutes special compensation.

**B.** *The Longevity Performance Stipend*

Relevant here, section 571, subdivision (a)(1) provides in part: "INCENTIVE PAY [¶] Bonus - Compensation to employees for superior performance such as 'annual performance bonus' and 'merit pay'. If provided only during a member's final compensation period, it shall be excluded from final compensation as 'final settlement' pay. A program or system must be in place to plan and identify performance goals and objectives. [¶] . . . [¶] Longevity Pay - Additional compensation to employees who have

---

[7] Section 571, subdivision (b) provides: "The Board has determined that all items of special compensation listed in subsection (a) are: [¶] (1) Contained in a written labor policy or agreement as defined at Government Code section 20049, provided that the document: [¶] (A) Has been duly approved and adopted by the employer's governing body in accordance with requirements of applicable public meetings laws; [¶] (B) Indicates the conditions for payment of the item of special compensation, including, but not limited to, eligibility for, and amount of, the special compensation; [¶] (C) Is posted at the office of the employer or immediately accessible and available for public review from the employer during normal business hours or posted on the employer's internet website; [¶] (D) Indicates an effective date and date of any revisions; [¶] (E) Is retained by the employer and available for public inspection for not less than five years; and [¶] (F) Does not reference another document in lieu of disclosing the item of special compensation; [¶] (2) Available to all members in the group or class; [¶] (3) Part of normally required duties; [¶] (4) Performed during normal hours of employment; [¶] (5) Paid periodically as earned; [¶] (6) Historically consistent with prior payments for the job classification; [¶] (7) paid exclusively in the final compensation period; [¶] (8) Not final settlement pay; and [¶] (9) Not creating an unfunded liability over and above PERS' actuarial assumptions."

15

been with an employer, or in a specified job classification, for a certain minimum period of time exceeding five years."

Thus, section 571 expressly provides that bonus pay and longevity pay separately constitute items of special compensation that must be reported to CalPERS. (§ 571, subds. (a), (c).) The County's longevity performance stipend for members of the Sheriffs Association makes payment of the stipend contingent on the member meeting two requirements, which are 20 years of service and satisfactory or outstanding performance. Section 571, subdivision (a) does not list as an item of special compensation a form of incentive pay that combines bonus pay and longevity pay, such as the County's longevity performance stipend. To determine whether the longevity performance stipend nevertheless constitutes an item of special compensation under section 571, as plaintiffs argue, we apply the rules governing the interpretation of administrative regulations.

We recently stated those rules: " 'Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies.' [Citation.] 'Our primary aim is to ascertain the intent of the administrative agency that issued the regulation.' [Citation.] 'We start with an analysis of the plain language of the regulation.' [Citation.] 'We give the regulatory language its plain, commonsense meaning. If possible, we must accord meaning to every word and phrase in the regulation, and we must read regulations as a whole so that all of the parts are given effect.' [Citation.] . . . 'If the plain language . . . is clear and unambiguous, our task is at an end and there is no need to resort to the canons of construction or extrinsic aids to interpretation.' [Citation.] When the intent cannot be discerned from the language of the regulation, ' " 'we may look to a variety of extrinsic aids, including the purpose of the regulation, the legislative history, public policy, and the regulatory scheme of which the regulation is a part. [Citation.]' [Citation.]" ' [Citation.]" (*In re Lambirth* (2016) 5 Cal.App.5th 915, 922 (*Lambirth*).)

16

We determine that Government Code section 20636 and section 571 together provide, clearly and unambiguously, that only those items of compensation expressly identified in section 571, subdivision (a) constitute special compensation that must be reported to CalPERS and included in CalPERS's calculation of retirement benefits. As we have noted, Government Code section 20636, subdivision (c)(7)(C) expressly states that special compensation does not include "payments the [Board of Administration] has not affirmatively determined to be special compensation." (See *City of Pleasanton*, *supra*, 211 Cal.App.4th at p. 527.)

Those payments that the Board of Administration has affirmatively determined to be special compensation are listed in section 571, subdivision (a), as stated in section 571, subdivision (c): "Only items listed in subsection (a) have been affirmatively determined to be special compensation." Thus, "[a]n item of special compensation not listed in subdivision (a) of [section] 571 cannot be used in determining a member's final compensation for pension purposes. ([§] 571, subd. (d).)[8]" (*City of Pleasanton*, *supra*, 211 Cal.App.4th at p. 527.)

It is undisputed that a longevity performance stipend or bonus was not included in the section 571, subdivision (a) list of qualifying items of special compensation. Moreover, there is nothing in the language of section 571 or Government Code section 20636 that indicates that the Board of Administration affirmatively determined that a form of incentive pay combining longevity pay and bonus pay constitutes special compensation. Therefore, we agree with the trial court that the longevity performance stipend does not constitute special compensation under section 571 that must be reported to CalPERS and included in CalPERS's calculation of retirement benefits.

---

[8] Section 571, subdivision (d) provides: "If an item of special compensation is not listed in subsection (a), or is out of compliance with any of the standards in subsection (b) as reported for an individual, then it shall not be used to calculate final compensation for that individual."

17

We are not convinced by plaintiffs' arguments to the contrary that section 571 should be construed to list the types of pay that qualify as special compensation, regardless of the label given by the employer; that section 571 is ambiguous and should be construed in plaintiffs' favor; and CalPERS representatives have conceded in discovery responses that the longevity performance stipend constitutes reportable special compensation.

Even assuming, without deciding, that section 571, subdivision (a) lists the types of pay that qualify as special compensation rather than specific items of special compensation, a plain reading of section 571, subdivision (a) does not support plaintiffs' argument. No language in section 571, subdivision (a) provides that a combination of longevity pay and bonus pay is a type of pay that qualifies as special compensation.

As to ambiguity, even assuming that section 571, subdivision (a) is ambiguous because it does not expressly prohibit the combination of two specified items of special compensation to form another item of special compensation, the rules governing the interpretation of administrative regulations do not support plaintiffs' argument. With regard to the interpretation of CalPERS regulations, the California Supreme Court has specifically instructed that "[a]ny ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute. [Citations.]" (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490 (*Ventura County*).) "Moreover, '[g]reat weight should be given to the administrative interpretation of the Board of Retirement unless clearly erroneous. [Citations.]' [Citations.]" (*Wheeler v. Board of Administration* (1979) 25 Cal.3d 600, 605.)

We determine that construing section 571 to authorize a local agency employer to combine two items of special compensation listed in section 571, subdivision (a) to form another item of special compensation would not be consistent with the clear language and

18

purpose of section 571 and its authorizing statute, Government Code section 20636, as shown by the legislative and rulemaking history.

The predecessor statute to Government Code section 20636 was former Government Code section 20023, which was "enacted in place of a previous statute bearing the same section number (Stats. 1993, ch. 1297, § 6, p. 7691) as part of a bill sponsored by CalPERS to address the then 'recently uncovered, but apparently widely used, practice of "spiking" (intentional inflation) the final "compensation" (upon which retirement benefits are based) of employees of [Cal]PERS local contracting agencies.' (Sen. Public Employment & Retirement Com., Analysis of Sen. Bill No. 53 (1993–1994 Reg. Sess.) as amended Mar. 29, 1993, p. 1.)" (*Tanner, supra,* 248 Cal.App.4th at p. 756.) The prior definition of "compensation earnable" was redefined for local agency employees to include "special compensation" in former Government Code section 20023. (*Ventura County*, *supra*, 16 Cal.4th at pp. 504-505.) Former Government Code section 20023 also included the Legislature's direction to CalPERS's Board of Administration to "promulgate regulations that delineate more specifically and exclusively what constitutes 'special compensation' as used in this section." (Former Gov. Code, § 20023, subd. (c)(6).)

This court granted CalPERS's request for judicial notice of CalPERS's rulemaking file for section 571 pursuant to Evidence Code sections 452, subdivision (c), and 459, subdivision (a), "which permit courts to take judicial notice of '[o]fficial acts of the . . . executive . . . . departments of . . . any state of the United States,' and which have been read to allow judicial notice of administrative agency records. [Citations.]" (*Associated Builders and Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 374, fn. 4.)

The rulemaking history for section 571 demonstrates that it was implemented for the following reasons: "Currently, the PERL allows all employers to report certain items to [Cal]PERS as special compensation and prohibits the reporting of other items in a

19

general description of what may, and may not, be reported as compensation. Effective July 1, 1994, the PERL will allow local agency and school district employers to report only those items of special compensation that are delineated in regulations adopted by the Board [of Administration]. [¶] Proposed Section 571 would provide an all-inclusive list of special compensation items that <u>must be</u> reported for local agency and school district employees, if authorized by written labor policy or agreement. Section 571 would set forth the <u>standards</u> followed by the Board in determining whether or not items of special compensation qualified for inclusion in the list." (CalPERS Rulemaking File, Cal. Code Regs., title 2, sections 566.1, 570, 571, and 572, Noticed July 15, 1994, p. 8.)

The rulemaking history also states that "[t]he purpose of Section 571 is to provide employer and employee groups with an *exclusive and specific list* of optional benefits that may be authorized by labor agreement, and <u>must</u> then be reported to [Cal]PERS for the calculation of individual retirement allowances." (Italics added.)

Our review of the pertinent legislative and rulemaking history shows that the Legislature intended that former Government Code section 20023 and its successor statute, Government Code section 20636, would combat pension spiking by, among other things, preventing local agency employers from adding to the items reportable as special compensation. Section 571 was implemented to serve that purpose by clarifying that the items of special compensation that are reportable to CalPERS for the calculation of retirement benefits are only those items included in the "exclusive and specific list" set forth in section 571. As CalPERS points out, "[t]o allow a combination of items creates uncertainty and confusion and moves away from the clear and precise list [of special compensation items] specified by the Board [of Administration]."

Moreover, where CalPERS's Board of Administration has affirmatively determined that a combination of different forms of incentive pay qualifies as one item of reportable special compensation, that item has been expressly included in section 571, subdivision (a). For example, section 571 subdivision (a)(1) authorizes the following

20

incentive pay as an item of special compensation: "Master Police Officer - Compensation to local police officers, county peace officers and school police or security officers who meet specified requirements, years of employment, performance standards, education, Peace Officer Standard Training (POST), and perform a specialty assignment."

The legislative and rulemaking history therefore supports our determination that the longevity performance stipend does not qualify as special compensation that the County must report to CalPERS and that CalPERS must include in calculating plaintiffs' retirement benefits because the longevity performance stipend is not listed as an item of special compensation in section 571, subdivision (a).

Our determination is not altered by the evidence indicating that CalPERS's representatives provided discovery responses in 2009 indicating a belief that items of special compensation could be a combined benefit, and also provided correspondence in 2006 that could be interpreted as advising the County to report the longevity performance stipend as special compensation. CalPERS's current position is stated in its respondent's brief: "Since 2000, CalPERS has held the position that the [longevity performance stipend], as drafted, is not a reportable item of 'special compensation' under section 571(a), as items of 'special compensation' cannot be combined." Even assuming that CalPERS has changed its position over time, " 'an administrative agency may change its interpretation of a statute, rejecting an old construction and adopting a new.' [Citation.]" (*Hudson v. Board of Administration* (1997) 59 Cal.App.4th 1310, 1326 (*Hudson*).)

Moreover, even if CalPERS representatives had consistently supported plaintiffs' interpretation of section 571 to include the longevity performance stipend, such evidence would be unavailing. " '[A]dministrative construction of a statute, while entitled to weight, cannot prevail when a contrary legislative purpose is apparent.' [Citation.]" (*Hudson*, *supra*, 59 Cal.App.4th at p. 1327.) For the reasons that we have discussed, it is

21

apparent that the Legislature's intent was to restrict the items of special compensation reportable to CalPERS to those items that the Board of Administration expressly included in section 571, subdivision (a), and to prevent employers from reporting as special compensation items, such as the longevity performance stipend, that were not expressly included.

Having thus determined as a matter of law that the longevity performance stipend does not constitute an item of special compensation under section 571, subdivision (a), we turn to plaintiffs' contentions regarding the merits of the judgments in favor of the County and CalPERS.

## C. *The County's Judgment*

Plaintiffs contend that the trial court erred in granting the County's motion for summary adjudication of issues, which resulted in the entry of judgment in the County's favor. According to plaintiffs, summary adjudication was precluded due to the existence of triable questions of material fact as to whether the longevity performance stipend was reportable as bonus pay and longevity pay within the meaning of section 571, subdivision (a).

Our evaluation of plaintiffs' contentions is governed by the applicable standard of review. "A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty . . . . A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).)

" 'A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment.' (Code Civ. Proc. § 437c, subd. (f)(2).) Accordingly, '[a] summary adjudication motion is subject to the same rules and procedures as a summary judgment motion.' [Citation.]" (*Rehmani v. Superior Court* (2012) 204

Cal.App.4th 945, 950.) The standard of review that applies to an order granting summary adjudication is therefore the same standard of review that applies to an order granting a motion for summary judgment. (*Ibid.*)

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) The trial court's stated reasons for granting summary judgment are not binding on the reviewing court, "which reviews the trial court's ruling, not its rationale. [Citation.]" (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498.)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.)

Therefore, "[w]e review a grant of summary adjudication de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citation.] [¶] The proper interpretation of a statute

and the application of the statute to undisputed facts are questions of law, which we also review de novo. [Citations.]" (*Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1569.)

In the present case, it is undisputed that the MOU between the Sheriffs Association and the County from 2001 to 2009 included the longevity performance stipends, that the County did not report any of the longevity performance stipends earned by members of the Sheriffs Association, and that CalPERS did not require the County to report the longevity performance stipend and did not include it in calculating the members' retirement benefits.

The trial court ruled as a matter of law in the January 21, 2011 order granting the County's motion for summary adjudication of the first amended verified petition that the "Longevity Performance Stipend (LPS) is not special compensation, in that [section 571] sets forth the exclusive list that identifies and defines what constitutes special compensation that must be reported to CalPERS, and there is no item on the list in [section 571] that combines longevity and performance elements as in the Monterey County LPS." Subsequently, in the February 7, 2014 order the trial court granted the County's motion for summary adjudication of the second amended verified petition as to all causes of action except the sixth cause of action, which plaintiffs later dismissed.

We have determined as a matter of law that the longevity performance stipend did not qualify under section 571, subdivision (a) as an item of special compensation that was reportable to CalPERS. Consequently, we agree with the trial court that the County did not have a duty to report the longevity performance stipend to CalPERS. Since all of plaintiffs' claims as set forth in the second amended verified petition's requests for writ relief and causes of action were based upon the allegations that the County had a duty to report the longevity performance stipend to CalPERS and make appropriate contributions so that CalPERS would include the stipend in calculating their retirement benefits, we

further determine that the second amended verified petition lacks merit as a matter of law in its entirety and judgment was properly entered in the County's favor.

### D. *CalPERS's Judgment of Dismissal*

Plaintiffs contend that CalPERS's motion for judgment on the pleadings should have been denied for the same reasons that the County's motion for summary adjudication should have been denied.

In the June 20, 2014 order the trial court granted CalPERS's motion for judgment on the pleadings and dismissed all causes of action against CalPERS on the ground that "Monterey County's Longevity Performance Stipend (LPS) is not special compensation pursuant to [section 571] and shall not be reported as special compensation to Defendant CalPERS." The causes of action against CalPERS in the second amended verified complaint all sought a peremptory writ of mandate compelling CalPERS to include the compensation earned by plaintiffs as a longevity performance stipend in both retroactively and prospectively adjusting their retirement benefits.

The applicable standard of review is well established: " 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' [Citation.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166; see also *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602.)

Since we have determined as a matter of law that the longevity performance stipend was not an item of special compensation under section 571, subdivision (a) that CalPERS had a duty to include in calculating plaintiffs' retirement benefits, we further determine that plaintiffs cannot state a cause of action against CalPERS arising from their claims regarding the longevity performance stipend. Accordingly, we conclude that the

25

trial court did not err in granting CalPERS's motion for judgment on the pleadings and entering a judgment of dismissal in CalPERS's favor.

## V.  DISPOSITION

The September 25, 2015 judgment in favor of the County respondents and the June 20, 2014 judgment of dismissal in favor of respondent CalPERS are affirmed.  Costs on appeal are awarded to respondents.


_____

BAMATTRE-MANOUKIAN, J.


WE CONCUR:


_____

ELIA, ACTING P.J.


_____

MIHARA, J.

Filed 6/5/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN DICARLO et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF MONTEREY et al.,<br><br>    Defendants and Respondents. | H041400<br>(Monterey County<br>Super. Ct. No. M90970)<br><br>ORDER FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on May 24, 2017, was not certified for publication in the Official Reports. The California Public Employees' Retirement System has requested the opinion be certified for publication. It appears that the opinion meets the standards set forth in California Rules of Court, rules 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

_____
BAMATTRE-MANOUKIAN, J.

_____
ELIA, ACTING P.J.

_____
MIHARA, J.

Trial Court:                                    Monterey County Superior Court
                                                Superior Court No.:  M90970


Trial Judges:                                   Hon. Susan J. Matcham
                                                Hon. Robert A. O'Farrell
                                                Hon. Lydia M. Villarreal
                                                Hon. Thomas W. Wills



Attorneys for Plaintiffs and Appellants:        David E. Mastagni
John DiCarlo, James Bass,                        Isaac Sean Stevens
Michael Shapiro, and Richard Perez              Mastagni Holstedt APC



Attorneys for Defendants and                    Charles J. McKee, County Counsel
Respondents:                                    Michael R. Philippi, Deputy County Counsel
County of Monterey, County of Monterey          County of Monterey
Sheriff's Office, Lew Bauman, and
Michael Miller



Attorneys for Defendants and                    Matthew G. Jacobs, General Counsel
Respondents:                                    Preet Kaur, Senior Staff Attorney
California Public Employees' System and         CALPERS
CALPERS Board of Administration