Filed 7/17/25  Shiralian v. Concord Development CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHAWN SHIRALIAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CONCORD DEVELOPMENT, INC., et al., <br><br> Defendants and Respondents. | F087364 <br><br> (Super. Ct. No. 21CECG02019) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

LaMontagne & Amador and Eric A. Amador; H. Ty Khazari and H. Ty Khazari for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Todd W. Baxter, Scott J. Ivy and Alex N. Newsum for Defendants and Respondents.

-ooOoo-

**INTRODUCTION**

Plaintiff and appellant Shawn Shiralian (appellant) filed suit against defendants and respondents Concord Development, Inc., Ali Alavi Moghaddam, and Alireza Najjaran (respondents) in March 2022, for breach of contract, negligent

misrepresentation, fraud, and disgorgement, in relation to a custom home being constructed for appellant for which respondents served as the general contractors. This appeal, however, concerns only the final cause of action for disgorgement, which was the sole cause of action on which the case proceeded to trial.

California law provides a strict disgorgement remedy for any work done by an unlicensed contractor in the state. However, it is undisputed respondents had a valid contractor's license during the relevant period. Instead, appellant relies on another statute, which states that a contractor's license is automatically suspended by operation of law if a contractor has employees but fails to carry workers' compensation insurance. It is also undisputed respondents did not have workers' compensation insurance. The sole disputed issue in this case was whether respondent Concord had any employees.

The major disagreement in this case thus focused on whether two individuals—a bookkeeper named Melinda Graff and a laborer named Jose Romero—were employees of respondent Concord. The evidence concerning what these individuals did is relatively undisputed: Graff prepared certain financial forms for Concord; Romero locked and unlocked the job site each day, and occasionally performed basic cleaning and weeding. The parties disagree about some of the specifics of Romero's work, including whether he was responsible for throwing away construction materials. Both individuals had alternative sources of income, with Graff having a full-time job at a church, and Romero doing gardening work for other clients and other businesses owned by Moghaddam and Najjaran. Neither was paid as an employee, and neither considered themselves an employee. The trial court relied on these facts and others in concluding that neither Graff nor Romero was an employee, and thus there was no need for Concord to have workers' compensation insurance.

Our role as an appellate court is largely constrained in this case to determining whether substantial evidence—not indisputable or uncontradicted evidence—supported the trial court's factual findings. We find this without difficulty. While we understand

2.

appellant has a different view of how the facts should be interpreted, we do not write on a blank slate. The trial court's conclusions were supported by substantial evidence, which means the decision must be affirmed on appellate review.

## BACKGROUND

In the fall of 2017, appellant hired respondents to build a custom house in Clovis. The original agreed upon amount for the project was $3 million. Over the course of construction, appellant and his wife requested numerous changes to the project which increased its cost, some of which were documented by work orders introduced into evidence. In total, appellant paid respondents over $6 million. Ultimately, appellant directed respondents to stop working on the property in July 2021.

Concord was formed in 1990, and ceased operations entirely after its work on appellant's home. Moghaddam functioned as the president, and handled the administrative work for the company, while Najjaran was responsible for "the actual contact with the subcontractors and the supervision of the project." Concord was a general contracting company, and did no construction on its own. It hired subcontractors and ensured they worked within their permits, and kept the job site safe and secure. Generally, Concord did not clean up after the contractors, who were responsible for cleaning up after their own projects.

The crux of this dispute centers on whether Concord's contractor license was suspended by operation of law, thus making it an unlicensed contractor during the construction project in question and subjecting it to certain consequences which flow from that condition. Unlicensed contractors not only are prohibited from bringing an action to collect compensation for work for which a license is required, but are subject to a statutory cause of action for disgorgement. (Bus. & Prof. Code, § 7031, subds. (a), (b) ["a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the

3.

unlicensed contractor for performance of any act or contract"].)[1]  Thus, the relevant sections of the Business and Professions Code incorporate both a shield and a sword:  the unlicensed contractor may not bring an action seeking any reimbursement for the work done, *and* the customer may seek disgorgement of " '*all* compensation paid.' " (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 518–519.)  This rule can be harsh, and results in an unlicensed contractor being required to return all sums paid without reductions or offsets for materials or services rendered.  (*Id.* at pp. 520–522.)  Our Supreme Court has described this as a "stiff all-or-nothing penalty for unlicensed work" that applies to prevent an unlicensed contractor from keeping any proceeds from the work "if unlicensed *at any time* while performing it." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 426.)  The statute, which bars recovery by an unlicensed contractor " 'in *law or equity*,' " thus extends even to claims of quantum meruit.  (*Id.* at p. 428.)

In this action, it was undisputed Concord was an appropriately licensed contractor for the duration of the project.  However, another statute governing contractors in the Business and Professions Code states, "[t]he failure of a licensee to obtain or maintain workers' compensation insurance coverage, if required under this chapter, shall result in the automatic suspension of the license by operation of law." (§ 7125.2.)  Appellant claimed at trial Concord was required to carry workers' compensation insurance and did not, and thus its license was automatically suspended by operation of law, triggering the statutory disgorgement remedy.

Again, there was no dispute Concord did not carry workers' compensation insurance during the duration of its work on the project.[2]  Instead, Concord maintained it

---

[1]     All further statutory citations are to the Business and Professions Code, unless otherwise noted.

[2]     Concord did obtain a workers' compensation insurance policy after this litigation began in order to seek to avail itself of the statutory safe harbor of substantial compliance.  (See § 7031, subd. (e) ["[T]he court may determine that there has been

4.

had no employees. Indeed, the Business and Professions Code provides that a contractor need not have on file a Certificate of Workers' Compensation Insurance if it has no employees. (§ 7125, subd. (b)(1).)[3] The dispute at trial in this case thus centered on whether Concord had any employees.

Appellant's case focused on the status of two different individuals who did work on behalf of Concord during this period: Jose Romero and Melinda Graff. Appellant maintains Romero and Graff were actually employees of Concord, thus triggering the requirement for workers' compensation insurance and therefore entitling him to statutory disgorgement.

Romero would secure the jobsite every day. He would also clean up bottles and cups "any time that he wanted to" or whenever directed by Najjaran. Romero's cleaning was limited to non-construction items, and Romero never cleaned up drywall or lumber at the site. Romero had been doing this type of work at various Concord construction sites over the prior 20 years, but never with a regular schedule. Concord had the power to terminate Romero at any time. Romero was paid by check. Romero, whose "main business is gardening," also performed cleaning and gardening tasks at an apartment complex owned by Moghaddam, as well as for other clients. Concord occasionally reimbursed Romero for certain costs, such as repairing his equipment, although it did not purchase equipment for him. Romero was not paid a set amount for his work for

---

substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) acted promptly and in good faith to remedy the failure to comply with the licensure requirements upon learning of the failure."].) Because we find no error in the court's conclusion that Romero and Graff were not employees, we do not reach the issue of whether Concord met the standards of the substantial compliance defense in section 7031, subdivision (e).

[3] The contractor must also not hold certain types of licenses. (§ 7125, subd. (b)(2).) No one suggests Concord held any of these types of licenses.

Concord, but rather was paid a lump sum based on the personal judgment of Moghaddam and Najjaran.

Graff performed certain bookkeeping and administrative tasks for Concord, including printing checks and transmitting documents to the company's accountant and tax preparer. She had performed this work for Concord for approximately 20 years prior to its cessation of operations. There was no set agreement as to her hours or her continued work, but rather Concord "could call her when we need her and we can stop having her services whenever we wanted to." Graff was given a lump sum every month that was typically about the same. She presented an invoice to Concord for her monthly work. Graff performed her work in Concord's office and on its equipment. Concord filed Form 1099s for both Graff and Romero.

Following appellant's demand that respondents' stop work on the property, appellant filed suit alleging causes of action for breach of contract, negligent misrepresentation, fraud, accounting, and disgorgement against respondents.[4] In April 2022, respondents moved for summary adjudication concerning appellant's alter ego theory of liability. The court granted summary adjudication in July 2022 and dismissed appellant's alter ego theories and disgorgement causes of action against the individual defendants.

Shortly prior to trial, the parties stipulated to dismiss all claims except appellant's claim for disgorgement against Concord under section 7031. The parties waived a jury trial and agreed to proceed by bench trial to have the court adjudicate whether Concord had any employees during the relevant time period and, if so, whether Concord had

---

[4]     Appellant's complaint also included a cause of action for alter ego liability against the individual respondents. Alter ego liability is not itself a separate cause of action, but rather a theory of vicarious liability that, in certain cases, allows courts to disregard the corporate form and assess responsibility for corporate liabilities to the individual shareholders of the corporation. (See *Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1359.)

substantially complied with the licensure requirements to fall within section 7031's safe harbor provision. The stipulation preserved appellant's right to appeal the summary adjudication of his alter ego theory of liability.

Trial occurred over three days in June 2023. Following trial, the court issued a written statement of decision pursuant to appellant's request. The court analyzed the question of whether Romero and Graff were employees or independent contractors under the ABC test set forth in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*), and found by a preponderance of evidence that both were independent contractors. It also noted it would have reached the same conclusion had it applied the test set forth in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*). The court made numerous findings related to underlying and evidentiary facts in its statement of decision. Further, the court also concluded that, even if Romero and Graff were employees, respondents had demonstrated substantial compliance so as to fall within section 7031's safe harbor.

A judgment in favor of respondents issued on September 11, 2023, and a notice of appeal was timely filed.

## DISCUSSION

### I.     *Standard of Review*

The standard of review on appeal following a bench trial is well-established. We review the trial court's factual findings for substantial evidence. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581; *SSL Landlord, LLC v. County of San Mateo* (2019) 35 Cal.App.5th 262, 267.) In substantial evidence review, we follow three rules: "First, we accept all evidence supporting the trial court's order. Second, we completely disregard contrary evidence. Third, we draw all reasonable inferences to affirm the trial court." (*Schmidt*, at p. 581.) If, doing this, we find substantial evidence to support the factual findings, our inquiry ends. (*Id.* at p. 582 ["[T]he appellate court's power begins

7.

and ends with a determination of whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court findings."].)

The trial court's purely legal conclusions, including its ruling on the motion for summary adjudication, are reviewed de novo. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273; *Flores v. Department of Transportation* (2022) 76 Cal.App.5th 678, 681; *DiCarlo v. County of Monterey* (2017) 12 Cal.App.5th 468, 488.)

To the extent appellant suggests our standard of review for all issues is *de novo* because a number of the evidentiary facts were undisputed, this is not well-taken. "Determining whether a person is an employee or an independent contractor is generally a question of fact if it depends on resolving disputes in the evidence, but it can be decided as a matter of law if the evidence supports only one credible conclusion." (*Vendor Surveillance Corp. v. Henning* (2021) 62 Cal.App.5th 59, 75.) Our Supreme Court has noted that "[t]he determination of employee or independent-contractor status is one of fact if dependent upon the resolution of disputed evidence *or inferences*." (*Borello*, *supra*, 48 Cal.3d at p. 349, italics added.) Thus, even where a number of evidentiary facts are undisputed, when the parties urge the court to draw different inferences in light of those evidentiary facts, the question is still primarily factual. Because of this, in general, "appellate courts have no authority to simply second-guess the conclusion reached by the fact finder; instead, the substantive 'determination (employee or independent contractor) is one of fact and thus must be affirmed if supported by substantial evidence.' " (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 78 [collecting cases].)

Here, there clearly were numerous disputes of fact, not only about the details of the work Romero and Graff did on behalf of Concord, but also about the inferences which should be drawn from those facts. The court was required to—and did—make credibility determinations. The court's determination of whether Romero and Graff were

employees or independent contractors will be reviewed for substantial evidence, unless otherwise specifically noted.

## II.    *The Trial Court Did Not Err by Applying the ABC Test Set Forth in* Dynamex

Appellant's first issue raised on appeal is that the trial court erred by performing an insufficient analysis of whether Romero and Graff were employees under the test set forth in *Borello*. Appellant maintains that the working relationship between Concord and Romero and Graff is governed by the *Borello* standard until 2020, and then by the so-called "ABC test" set forth in *Dynamex* after 2020. Respondents suggest the ABC test is the applicable standard, but that even if *Borello* is applicable, no reversible error occurred because the trial court noted its outcome would be the same under *Borello* and because the factors that it applied within the ABC test would permit the same outcome under *Borello*.

Since the parties agree the ABC test applies to this case, we assume it does without deciding that issue. The ABC test, originally set forth in *Dynamex*, has been codified, and states a person "providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied:  [¶] (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.  [¶] (B) The person performs work that is outside the usual course of the hiring entity's business.  [¶] (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed."  (Lab. Code, § 2775, subd. (b).)

The parties also seem to agree *Borello* applies. Under *Borello*, courts must weigh and balance numerous factors to determine whether an individual is an employee or an independent contractor of the hiring entity. (*Borello*, *supra*, 48 Cal.3d at pp. 350–351.) The primary factor for consideration is whether the hiring entity has the right to control

the " 'manner and means of accomplishing the result desired.' " (*Id.* at p. 350.) However, realizing that this question "applied rigidly and in isolation" may be of "little use" in certain contexts, the court also recognized there are a number of secondary indicia which may be relevant in determining the nature of the relationship. (*Ibid.*) Among these, the right to discharge at will and without cause is the most important. (*Id.* at p. 350.) Additional factors derived largely from the Restatement (Second) of Agency include: "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." (*Borello*, at p. 351.) These factors " 'cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' " (*Ibid.*)

The trial court concluded Concord had demonstrated each of the ABC test factors as to both Romero and Graff. Concerning Graff, the court noted she "was in control of how she performed her work," performed work for Concord two or three times per month, and that while she was given information about which bills to pay, how and when to do the work was under her control. Second, the court concluded Graff performed work outside of Concord's usual course of business. It noted Concord was "in the business of constructing homes. Bookkeeping and accounting are necessary to keep such a business running, but that is not the business Concord is in. Bookkeeping and accounting are incidental to properly managing Concord's business." Lastly, the court noted Graff's primary occupation was providing bookkeeping and accounting services for a local

church, which she described as her "real job." She was employed at the church and received W-2's for those wages. She also had side jobs with several other businesses doing work similar to that she did for Concord, which she mostly performed out of her home. The only reason she performed work for Concord at Concord's office was because "Concord's information was not uploaded to the cloud and could not be accessed remotely."

Concerning the first prong of the ABC test for Romero, the court concluded he did maintain control of his work free from Concord. The court noted it "found the testimony of [] Najjaran and [] Romero credible on this issue. Mr. Romero was able to conduct his cleaning and securing of the construction site without direct supervision by Concord. The fact Mr. Romero would contact Mr. Najjaran if something outside Mr. Romero's normal work needed to be done, such as cutting down tall weeds, does not negate Mr. Romero's ability to control when he worked and how he went about cleaning and securing the property. The construction site needed to be unlocked prior to the subcontractors' arrival, but when and how that was done was within Mr. Romero's control. Mr. Romero locked the doors and windows every day but only engaged in cleaning trash two to three times per week. Mr. Romero did the cleaning when he chose to without supervision by Concord. Mr. Romero was also in control of when he unlocked the site in the morning and when he locked the doors and windows at the end of the day." Thus, the court found by a preponderance of the evidence that Romero was free from the control and direction of Concord.

Concerning the second prong of the ABC test for Romero, the trial court again noted Concord was in the business of constructing homes, specifically by coordinating and contracting with subcontractors to perform the actual construction. Cleaning up trash left by subcontractors was not within Concord's usual scope of business. The court noted, "It is commonplace for businesses to use the services of an independent contractor to clean parking lots at night or to clean business locations after work hours. The fact

11.

cleaning is needed does not transform cleaning into part of the normal scope of those businesses. Cleaning is incidental to the work of the business." Indeed, the court accepted Romero's testimony that he did not generally pick up or throw away construction-related materials. It found appellant's testimony about his observations of Romero at the job site not credible, noting it was "inconsistent, argumentative, and self-serving."

Lastly, the court found Romero was customarily engaged in the landscaping business, which it found similar to the work he conducted for Concord. "When a landscaper is responsible for the upkeep of locations, cleaning up trash found at the site would be a normal part of that service. Mr. Romero helped maintain the locations where he provided landscaping services and he also helped maintain Concord's construction site, including weeding if necessary." Thus, the court concluded both Graff and Romero met each of the three criteria to be considered independent contractors: control over the performance of the work; performance of work outside the hiring entity's usual course of business; and independent employment in an established trade or occupation of the same nature as that involved in the work performed for Concord.

Having found that neither Graff nor Romero were employees under the ABC test, it noted its "finding would be the same using the analysis laid out in *Borello*." Elsewhere in the decision, the court again noted that it "reaches the same conclusion whether using the ABC test in *Dynamex* or the analysis described in [*Borello*]." Appellant argues this level of discussion was insufficient to fulfill the trial court's requirement to make an adequate statement of decision. As appellant concedes, however, " '[t]he trial court is not required to respond point by point to the issues posed in a request for statement of decision. The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' " (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 983.) Even where " 'a court fails to make a finding on a particular matter, if the judgment is otherwise supported, the omission is harmless error

unless the evidence is sufficient to sustain a finding in favor of the complaining party which would have the effect of countervailing or destroying other findings.' " (*Ibid.*) Here, the ultimate fact upon which a decision was required by the trial court was whether, under the factual circumstances of this case, either Graff or Romero was an employee of Concord. The court concluded they were not, and explained its reasoning. Appellant identifies no omitted considerations which show the trial court lacked substantial evidence or misunderstood the law in reaching that conclusion.

Moreover, we note that the ABC test incorporates the major considerations under the *Borello* common law test. The California Supreme Court has itself noted the ABC test is not a significant departure from the *Borello* test. (*Vazquez v. Jan-Pro Franchising Intern., Inc.* (2021) 10 Cal.5th 944, 956–957 ["We did not depart sharply from the basic approach of *Borello* [in *Dynamex*] …. Thus, even if we were to give weight to [the] defendant's reliance argument at this juncture, it bears repeating that the test we ultimately adopted in *Dynamex* drew on the factors articulated in *Borello* and was not beyond the bounds of what employers could reasonably have expected."].) Other courts have noted the similarities between the *Borello* test and the ABC test. (*Garcia v. Border Transportation Group, LLC* (2018) 28 Cal.App.5th 558, 569 ["Part A [of the *Dynamex* test] involves *Borello*'s common law 'control' test"]; *Sportsman v. A Place for Rover, Inc.* (N.D. Cal. 2021) 537 F.Supp.3d 1081, 1100.)

While the *Borello* test does differ from the ABC test, the difference, of course, is that the ABC test is stricter and therefore a more difficult test under which to find an individual is an independent contractor. (*Garcia v. Border Transportation Group, LLC*, *supra*, 28 Cal.App.5th at p. 572 [noting *Dynamex* changed the standard by presuming the worker to be an employee, unless an affirmative showing was made on each part of the ABC test].) Under the ABC test, the hiring agency must affirmatively demonstrate each of the three criteria; if it fails to meet any prong, it fails to rebut the presumption that the hired individual is an employee. (Lab. Code, § 2775, subd. (b); *Gonzales v. San Gabriel*

*Transit, Inc.* (2019) 40 Cal.App.5th 1131, 1154 ["The ABC test is conjunctive, and the hiring entity's failure to establish *any* of the following three factors precludes a finding that the worker is an independent contractor."], superseded on other grounds as stated in *Parada v. East Coast Transport Inc.* (2021) 62 Cal.App.5th 692.)  While the ABC test may be "more streamlined" (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 289), it also imposes a higher burden on the hiring entity, since each prong requires an affirmative showing and a failure of proof on any prong results in categorization as an employee.

The *Borello* test, by contrast, is less strict and permits a more general and equitable consideration of numerous secondary factors which may or may not influence the court's factual decision as to whether an individual is an employee or an independent contractor.  (See *Borello*, *supra*, 48 Cal.3d at p. 351 [" 'Generally, … the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' "].)  While the control-of-work element is the core of the test, and the right-to-discharge element is the most important secondary factor, the *Borello* test does not intrinsically *require* either to be resolved a certain way for an individual to be an independent contractor.

We stop short of ruling that, in *any* case where an individual is determined to be an independent contractor under the ABC test, the outcome will necessarily be the same under the *Borello* test, as there is no need to issue so broad a ruling.  However, here, no convincing argument is made that consideration of each (or any) of the secondary factors identified in *Borello* that the trial court did not expressly address in its statement of decision would have changed the trial court's ultimate determination about the nature of the relationship between Graff and Romero, on the one hand, and Concord, on the other.  The court found both Graff and Romero controlled the manner and means of their work, which is the single most important factor under the *Borello* test.  The court also concluded both Graff and Romero performed tasks outside of Concord's usual business,

14.

which is one of the secondary factors under *Borello*. And the court affirmatively concluded both Graff and Romero were "customarily engaged in an independently established trade … of the same nature as that involved in the work performed" (Lab. Code, § 2775, subd. (b)), another secondary factor under *Borello*.

It is true other secondary factors could cut in different ways. Arguably, *Borello*'s secondary factor (c)—the skill required for the task—might have suggested Romero's work was more like an employee, because it was relatively unskilled. *Borello*'s secondary factor (d)—whether the worker provides the instrumentalities and tools— might have suggested Romero was an independent contractor, since the evidence showed Concord did not purchase equipment for him to complete his work. However, re-weighing all these factors is not our task. We do not write on a clean slate, because the trial court considered the mix of all these factors when it noted its outcome would be the same under the *Borello* test.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Appellant filed objections to the statement of decision noting the trial court had not specifically delineated whether certain secondary factors in *Borello* supported or detracted from a finding that Graff and Romero were independent contractors. Because of this, we do not presume the trial court found each of these unspecified factors supported its conclusion. (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 981 ["[I]f the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal … that the trial court decided in favor of the prevailing party as to those facts or on that issue.' "]; Code Civ. Proc., § 634.) However, we do presume that, when the trial court said its outcome would be the same under the *Borello* test, it said this having performed the *Borello* test, which requires a general consideration of multiple factors. The court could well conclude the *Borello* test showed

15.

Graff and Romero were independent contractors, even if certain factors weighed in favor of finding them employees. Indeed, even if every other secondary factor which the trial court did not expressly address weighed in favor of finding Graff and Romero were employees, it still could have reasonably found they were independent contractors. This is particularly true considering the court found the single most important factor—control over their work—counseled in favor of finding Graff and Romero to be independent contractors. Appellant has made no showing of a lack of substantial evidence to support the trial court's finding under *Borello*.

Appellant's reliance on *Becerra* and *Linton v. DeSoto Cab Co., Inc.* (2017) 15 Cal.App.5th 1208 (*Linton*) as authority saying a trial court must specifically delineate and rule on whether each secondary factor supports or opposes a finding of employee status under the *Borello* test is misplaced. *Becerra* concerned an action by newspaper carriers against the Fresno Bee, and, particularly, whether the paper's failure to pay the carriers' mileage rates violated the Unfair Competition Law (§ 17200 et seq.). (*Becerra*, *supra*, 69 Cal.App.5th at p. 922.) This court's concern in *Becerra* was that the trial court had relied heavily on certain regulations promulgated by the Employment Development Department for the purpose of determining entitlement to unemployment insurance, affording those regulations near-determinative status in the question of whether the carriers were employees for other purposes. (*Id.* at pp. 936–937.) The trial court described those regulations as being entitled to " 'substantial deference' " and having " 'strong persuasive power' " because they pertained to a subject within the agency's jurisdiction. (*Id.* at p. 936.) The regulations were highly detailed, and specifically stated whether certain contractual provisions or factual details were indicative of employee or independent contractor status. (*Id.* at p. 937.) As an example of the specificity involved, the regulations noted a contract between the newspaper and carrier which contained a "hold harmless" provision and required the carrier to post a bond at her own expense was indicative of an independent contractor relationship. (*Ibid.*) The trial court also accepted

that the regulations affirmatively prevented certain provisions of a newspaper/carrier contract from being considered as evidence of employee status, including a right to terminate in the event of a material breach and a right to participate in an insurance program or other benefits.  (*Ibid.*)

As we explained in *Becerra*, the trial court's heavy reliance on these regulations was misplaced, because the regulations were not entitled to deference in the context of the case.  (*Becerra*, *supra*, 69 Cal.App.5th at pp. 941–946.)  We noted "numerous reasons" why these regulatory standards should not be imported into the common law test for employee status for purposes other than determining entitlement to unemployment insurance.  (*Id.* at pp. 944–945.)  Ultimately, we concluded "the trial court erred in deferring to [California Code of Regulations] section 4304-6 to determine the carriers were independent contractors."  (*Id.* at p. 946.)

We then noted in *Becerra* that the trial court also purported to find in the alternative that, even if no deference to the regulations was owed, the carriers were independent contractors under the *Borello* test.  (*Becerra*, *supra*, 69 Cal.App.5th at p. 946.)  However, we reversed because the "trial court failed to fully set aside the EDD regulations in attempting to apply *Borello*."  (*Ibid.*)  In doing so, we noted the trial court's analysis of key factors, such as the right to control, "was based primarily on the guidelines set forth in [California Code of Regulations] section 4304-6."  (*Id.* at p. 947.)  We observed the trial court's application of this factor followed the regulation too closely, and failed to consider whether the hiring entity retained the "right to control the necessary operations" of the carriers.  (*Ibid.*)  "Because the trial court failed to consider necessary elements of the *Borello* test, *and instead relied on the EDD standard*," we determined reversal was warranted.  (*Id.* at pp. 947–948, italics added.)

Similarly, in consideration of the secondary factors identified in *Borello*, we noted "the trial court seemingly relied on the EDD regulations to resolve at least some of the secondary factors."  (*Becerra*, *supra*, 69 Cal.App.5th at p. 949.)  Thus, on remand, we

17.

directed the trial court "to consider the secondary factors *without resort to [California Code of Regulations] section 4304-6*, and with an eye toward determining whether employee or independent contractor status best effectuates the intended scope and purposes of Labor Code section 2802." (*Ibid.*, italics added.)  Thus, our concern in *Becerra* was not the trial court's failure to consider certain secondary factors, but the overwhelming influence its mistaken deference to the EDD regulations clearly had in its *Borello* analysis.

*Linton*, meanwhile, concerned a taxicab driver who filed suit against a taxicab company after he was fired based on customer allegations of his misuse of credit card information, claiming the company had failed to pay all necessary wages and improperly required him to pay a "gate fee" every shift.  (*Linton*, *supra*, 15 Cal.App.5th at pp. 1211, 1212.)  In reaching its conclusion that the driver was not an employee, the trial court concluded *Borello* and its progeny specifically pertaining to taxicab drivers did not control the case, because the driver was not seeking worker's compensation or unemployment insurance benefits.  (*Linton*, at p. 1214.)  The *Linton* court concluded this was wrong, and that *Borello* did set forth the applicable test.  (*Linton*, at pp. 1215–1218.)  The trial court also erred by placing the burden on the driver to prove he was an employee, rather than on the taxicab company to prove the driver was an independent contractor.  (*Id.* at pp. 1220–1221.)

It is apparent from the above discussion that both *Becerra* and *Linton* concerned cases where the trial court fundamentally misunderstood the applicable test to be applied.  In *Becerra*, the trial court gave near-determinative weight to regulations which were inapplicable to the question in front of the court, thereby effectively refusing to apply the standard in *Borello*.  In *Linton*, the trial court decided *Borello* was simply not relevant to the case, because it did not concern workers' compensation or unemployment insurance.  In both of these cases, the trial court failed to appreciate the legal test it was meant to apply.  Neither stands for the proposition that the trial court errs simply by failing to

18.

expressly delineate how much weight is being assigned to each secondary factor under *Borello*. While the *Linton* court also disagreed with the trial court's application of the *Borello* factors, to the extent such factors were considered in its ruling, both cases declined to decide as a matter of law whether the individual was an employee, and instead simply remanded the matter for consideration under the proper standard. (*Linton*, *supra*, 15 Cal.App.5th at pp. 1221–1223, 1225–1226; *Becerra*, *supra*, 69 Cal.App.5th at pp. 948–949.)

In this case, appellant does not claim the trial court applied the wrong test. Nor could he, since he affirmatively told the court to apply the ABC test and to apply the *Borello* test, which is precisely what the court did. To the extent appellant's claim hinges on his belief that the court erred simply by failing to delineate every aspect of the *Borello* test, he has provided no authority supporting this position.

Moreover, even if we were to find error, we could not and would not presume it was prejudicial. (See *Becerra*, *supra*, 69 Cal.App.5th at p. 946; *Linton*, *supra*, 15 Cal.App.5th at p. 1225 [considering whether it was "reasonably probable that plaintiff would have received a more favorable ruling" had the trial court not committed the errors in question].) We are not convinced that further consideration of any additional factors by the trial court would make it reasonably probable appellant would have achieved a different outcome. Appellant asks us to consider that there might have been sufficient evidence to support a different conclusion by the trial court. This is not, however, the applicable question. Rather, we ask whether it is reasonably probable appellant would have received a more favorable ruling, had the trial court been explicit in how much weight it was assigning to each of the secondary factors under *Borello*. We understand appellant believes his version of the facts was more correct than what the trial court found, but has done nothing to convince us that more explicit delineation of the secondary factors would have changed the court's mind. As the trier of fact, the trial court was asked to listen to conflicting testimony and make credibility assessments

19.

regarding the witnesses put in front of it. It specifically noted it found the testimony of Graff and Romero—all of which supported respondents' version of facts—to be credible, and the testimony of appellant to be "inconsistent, argumentative, and self-serving." No persuasive showing has been made that, even if the trial court erred by not being more express in its consideration of each of the secondary factors under *Borello*, a more thorough discussion would have a reasonable chance of leading to a more favorable ruling for appellant.[5]

Appellant also takes issue with the trial court's application of the ABC test. However, appellant's arguments show he simply disagrees with the trial court's analysis, not that it was unsupported by substantial evidence. For example, he argues the trial court incorrectly found Romero's work at the jobsite was outside of Concord's usual business because it "was necessary to protect Concord's investment in the project." This is an argument appropriate for trial, not on appeal. On appeal, we will uphold the trial court's findings if there is substantial evidence to support them. Here, there was evidence Concord was a general contractor that coordinated construction of custom homes via

---

[5] Appellant makes other confusing, tangential arguments during this section of his brief. For instance, he suggests it was improper for the court to engage with equitable considerations in analyzing the *Borello* factors. This makes little sense: when the court is engaged in a multifactor weighing test, it is obviously, in some sense of the word, making equitable considerations. (See, e.g., *Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 318 [noting an action was equitable under the " 'gist of the action' " test when it required application of a multifactor test]; *Interactive Multimedia Artists, Inc. v. Superior Court* (1998) 62 Cal.App.4th 1546, 1556.) Moreover, the authority cited by appellant discusses the inappropriateness of applying equitable considerations to the application of section 7031, not the *Borello* test. (See *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works, Inc.*, *supra*, 36 Cal.4th at p. 424.)

Appellant also argues this court "can take judicial notice of the fact that simple cleanup and lock-up work are more commonly performed under supervision." We decline that invitation for numerous reasons, both procedural and substantive. (Cal. Rules of Court, rules 8.54, 8.252; Evid. Code, §§ 451, 452, 459.) The extent and manner of control and supervision over Romero's work was and is obviously a disputed fact in this case.

various subcontractors. As the trial court noted, while cleaning and securing a jobsite may be necessary to such a business, the tasks are incidental to Concord's work. They are not the purpose for which a customer would have hired Concord.

Similarly, appellant objects to the trial court's characterization of Romero's work for Concord as being a gardener or landscaper, instead stating he "provided construction clean up services." Again, however, there was evidence Romero maintained and upkept the construction site, and this included weeding as well as throwing away trash. Thus, there was substantial evidence from which the trial court could conclude Romero's work was of a similar type to his outside landscaping and gardening work.[6]

Because we conclude there was substantial evidence by which the trial court could find Graff and Romero were not employees of Concord, there is no cause for us to reach either the question of substantial compliance or appellant's theory of alter ego vicarious liability.

## DISPOSITION

The judgment of the trial court is affirmed. Respondents shall recover their costs on appeal.

DE SANTOS, J.

WE CONCUR:

PEÑA, Acting P. J.

SNAUFFER, J.

---

[6] Appellant here makes another inappropriate request for judicial notice that "as a matter of common knowledge that gardening is predominantly a matter of planting, fertilizing, pruning, edging, mowing and leaf-blowing." Again, for a variety of procedural and substantive reasons, we decline this request for judicial notice. (Cal. Rules of Court, rules 8.54, 8.252; Evid. Code, §§ 451, 452, 459.) How to characterize Romero's work is obviously a matter of dispute in this case.